JOHN R. WALSH *et al.*

*v.*

CHARLES W. SHUMWAY *et al.*

1. ATTORNEY AT LAW—*right to compensation under special contract.* Where an attorney was employed to commence and prosecute legal proceedings for the recovery of real estate for his client, under a special contract that he was to receive as a fee one-fourth of the land recovered; and he was afterwards authorized to compromise the litigation upon certain terms, and in that event his fee was to be one-fourth of what he might

thus secure, but he neither recovered the land nor effected any compromise, he not being prevented from so doing by any act of his client; and it appeared that the attorney failed to use reasonable diligence in the performance of his undertaking, and had never brought the action commenced by him to trial, or prepared for trial, although the suit had been pending about four years: *Held*, that such neglect of duty authorized the client to seek other aid, and, having done so, he could not be required to execute the original agreement.

2. Same—*right of client to rescind contract.* While it is true that a client can not rescind, at discretion, a special contract with his attorney, yet it results, from its very nature, that he may do so if the attorney fails to use reasonable diligence in the performance of his part of the undertaking.

3. Same—*effect of rescission on attorney's claim for compensation.* Where an attorney at law, who was retained under a special contract by which he was to receive one-fourth of the lands recovered by him, or a certain share of the amount realized upon a compromise, and the client rightfully discharged him for inattention to the duties he had undertaken, and employed other counsel: *Held*, that the attorney so discharged was not entitled to recover upon the principle of a *quantum meruit;* the contract being an entirety, there could be no apportionment of compensation.

4. But while the attorney, under such circumstances, is not entitled to recover under his contract, yet where he advanced certain sums of money for his client, in payment of abstracts and taxes, he may recover for the same.

5. Same—*negligence justifying discharge.* Where an attorney, employed to recover certain land, brought ejectment, in December, 1866, and in May, 1870, had not brought the case to trial, or made the necessary preparation for trial, and no satisfactory excuse was shown, and the only question involved was one of law, and the proof necessary to present it was of the simplest character: *Held*, that such delay raised a presumption of extreme negligence on the part of the attorney, and, unexplained, fully justified the client in rescinding the contract under which the attorney was employed.

Appeal from the Circuit Court of Cook county; the Hon. Erastus S. Williams, Judge, presiding.

Messrs. Goudy & Chandler, for the appellants.

Messrs. Monroe, Bisbee & Gibbs, and Mr. A. Garrison, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

In 1866, Mrs. Luff conveyed certain real estate, in the city of Chicago, to Shumway, one of the appellees herein, to enable him to prosecute, in his own name and at his own risk, an action of ejectment for the recovery of the property, which was at that time held under an adverse title.

At the time of making this arrangement, Shumway consulted Sloan, an attorney, and one of the appellants herein, and agreed with him that he should take charge of the litigation, and receive, as a fee, one-quarter of the property.

Sloan commenced the suit in December, 1866. In 1868, he employed Mr. Garrison, a member of the bar, to assist him in the prosecution. The case, however, was never brought to trial; and in 1870, Shumway, having authorized Sloan to compromise, but without effect, saw Garrison, and offered him $1000 if he would settle the suit on certain terms fixed by Shumway. Garrison effected a compromise with the owner of the adverse title, on the terms prescribed, and, by agreement of parties, the property was sold under both titles.

Shumway received $20,000 for the title held in his name, and paid $1000, as a fee, to Garrison.

Sloan had in his possession a written memorandum, executed by Shumway in 1866, which was drawn for the purpose of authorizing Sloan to compromise the suit or sell Shumway's title, and which stated that Sloan had a quarter interest in the land. Sloan heard of the pending negotiations for the sale of the land by Garrison, and placed this instrument on record, with a memorandum on the back, made by himself, describing the land more specifically. This was on the 3d of May, 1870—the same day upon which the deed was executed. The purchaser, before recording the deed from Shumway, was advised of the filing of this instrument, and, regarding it as a cloud upon the title which Shumway had warranted as against his own acts, insisted upon protection against the

474          WALSH *et al. v.* SHUMWAY *et al.*     [Sept. T.,

Opinion of the Court.

claim of Sloan. To give such protection, an indorsement was placed upon a note for $5000, given to Shumway as part of the purchase money, to the effect that its payment should be postponed until the cloud should be removed.

The bill, in this case, was filed by Shumway against Sloan, and Walsh, his assignee, to remove the cloud by a decree extinguishing the claim set up by Sloan. Walsh and Sloan filed a cross-bill, claiming an interest in the land to the extent of an undivided quarter, and asking that, in any event, an account be taken of the amount equitably due Sloan, and praying for general relief. Mrs. Luff, from whom Shumway derived title, was made a party to the cross-bill. On the final hearing, the court dismissed the cross-bill, and granted the relief prayed in the original bill. The complainants in the cross-bill appealed.

The written memorandum given by Shumway to Sloan was as follows:

"George M. Sloan being entitled, by contract with me, to one-fourth interest in the land bought by me of Percies B. Luff, and now in suit with Albee (C. P.), I hereby authorize him, as my attorney, to settle and compromise with said Albee said suit, and agree for me that I shall quit-claim to said Albee my interest in said land for $15,000, either in cash or good, well secured paper, at the ordinary time; it being understood that this is my minimum, and that I am to get three-fourths of whatever said Sloan shall settle for.

"(Signed.)                          C. W. SHUMWAY.

"The land referred to is that sold to C. W. Shumway by Percies B. Luff, deed recorded in book of deeds '363,' p. 612.

"GEORGE M. SLOAN."

It is very plain that this contract was not intended to give Sloan a vested interest in the land, or to recognize him as having such interest. It must be interpreted in the light of surrounding circumstances, and with reference to the existing

relations of the parties. Construed in this way, it was evidently intended merely as a statement that Sloan was to have one-fourth of the land, if he should recover it in the pending suit, or one-fourth of what he should receive upon a compromise, if he could so compromise as to secure to Shumway $15,000; but he neither recovered the land nor did he effect a compromise, nor was he prevented, by any improper interference on the part of Shumway, from doing one or the other. He was so inattentive to the duties he had undertaken that Shumway was justified in taking the business into his own hands, or securing other assistance besides that of Sloan. He pursued the latter course, and effected a compromise through the instrumentality of Garrison, whom he employed and paid for that purpose.

Sloan had had the business in charge about four years, and had not progressed beyond the filing of a declaration in ejectment. Under such a contract as that existing between Shumway and Sloan, it is the duty of the attorney to exercise reasonable diligence in the prosecution of the suit, and if he fails to do so, the client must be at liberty to seek other aid. If compelled to do this, he can not be required to execute the original agreement.

While he can not rescind the contract at discretion, it results, from its very nature, that he may do so if the attorney fails to use reasonable diligence in the performance of his part of the undertaking. Whether, in such event, the attorney would be entitled to any compensation for services rendered, has not been discussed in the present case; but, upon the well recognized principles governing analogous cases, we do not perceive how compensation can be given upon the principle of a *quantum meruit*. The contract is an entirety, and the attorney having failed to perform, there can be no apportionment of compensation. Of course it differs from a case where an attorney has been retained without a specific contract.

That there was a degree of negligence which justified Shumway in virtually rescinding his contract with Sloan, can not be reasonably denied. The ejectment was commenced in December, 1866, and stood until the compromise was made, in May, 1870, without having been brought to trial. No satisfactory reason is shown. The adverse title depended on the validity of a deed made under a power of attorney executed by Mr. and Mrs. Luff. When the deed was executed, they were residents of this State, and the only question was, whether, as the law then stood, a married woman, resident in this State, could convey her land by an attorney in fact. This being the nature of the case, we can not accept any of the excuses offered for the delay as a reasonable explanation. The question in issue was merely one of law. The proof to be made, in order to present the question, was of the simplest character. The delay raises a presumption of extreme negligence on the part of Sloan, which has not been explained, and which justified Shumway in treating the contract as at an end.

It appears, however, that Sloan had advanced certain sums of money, in payment of abstracts and taxes. He was entitled, on his cross-bill, to have an account taken of this money, and a decree against Shumway for its repayment, with interest.

It is true, Shumway appears to great disadvantage in this record, even upon his own evidence, but this is in his relations to Mrs. Luff, and not in his transactions with Sloan. It is only with these last that we have to deal in this case.

The decree is reversed and the cause remanded, for the purpose of having an account taken of the moneys advanced by Sloan. In other respects, the circuit court decreed rightly.

*Decree reversed.*