## DAN GUNN & Co., Appellants, v. C. A. NEWCOMB, Appellee.

Contract: CONSTRUCTION: PERFORMANCE. By the terms of a written contract, the defendant agreed to purchase of the plaintiffs a certain stock of merchandise and store fixtures, and to pay therefor an amount equal to the inventory price of such goods and fixtures at the time of an invoice thereof to be made on a day named; no provision being made as to by whom the invoice was to be taken nor how the prices were to be fixed. Upon the date named for taking the invoice the plaintiffs and the defendant met at the store where the stock in question was kept, and without previous agreement as to the manner in which the property should be inventoried, nor as to the basis upon which it should be appraised, a member of the plaintiff firm proceeded to call off the goods and fixtures in question, and to affix prices thereto, while another member of the firm wrote the same down for the plaintiffs, and one A. did the same for the defendant. During this time the defendant went through the stock and examined the goods after they were called off, but took no part in affixing the prices as called, and made no objection thereto, except in one or two instances that the values announced were too high, when the same were lowered, and so recorded. At the close of the inventory taken as aforesaid, the defendant took the same home with him, with the key to the storeroom, and retained the same over night. The next day he returned the key to the plaintiff, with the announcement that the goods and fixtures as appraised amounted to so much that he could not make the purchase; and thereupon the parties proceeded no further in the matter. *Held*, that the agreement of sale contemplated that the inventory should be taken upon a basis of valuation, and by such persons, as might afterwards be agreed upon by the parties; and, the plaintiff having failed to show that an inventory had been so taken, the refusal of the defendant to perform the contract, upon the inventory taken as aforesaid, did not entitle the plaintiff to recover damages as for a breach thereof.

*Appeal from Montgomery District Court.*—HON. N. W. MACY, Judge.

TUESDAY, MAY 19, 1891.

THIS action is brought to recover damages on account of an alleged breach of contract to purchase a

stock of merchandise and other property. A jury was waived, and there was a trial by the court, which resulted in a judgment in favor of the defendant for costs. The plaintiffs appeal.—*Affirmed.*

*J. M. Jenkins,* for appellants.

*C. E. Richards* and *S. McPherson,* for appellee.

ROBINSON, J.—The evidence submitted on the trial is not presented to us, but the district court in giving its decision filed a statement in writing of the facts found, and the legal conclusions founded thereon, which we are asked to review. The findings of facts are as follows: *"First.* That on the ninth day of February, 1889, the plaintiffs and the defendant were residing at Red Oak, Iowa ; that at that time, and for several years prior thereto, the plaintiffs were engaged in mercantile business, doing a general retail business in hats, caps and gents' furnishing goods, etc. *Second.* That on the ninth day of February, 1889, the plaintiffs entered into and signed the written agreement attached to the plaintiff's petition, which is in words and figures, following, to-wit :

" 'RED OAK, IOWA, February 9, 1889.

" 'Know all men by this article of agreement, that Dan Gunn & Co. do hereby sell and transfer to Chas. Newcomb their right, title and interest in the stock of hats, caps and gents' furnishing goods, along with fixtures and room now occupied and used by said Dan Gunn & Co. in their retail business, for amount to equal the inventory price of goods and fixtures in said business at time said stock is to be invoiced, February 18, 1889, to be paid as follows : The said Chas. Newcomb is to transfer to the said Dan Gunn & Co. a one and one-half story frame house, situated on lots — and 7, block 61, Red Oak Junction, Iowa, along with the above-described lots ; the same to be freed from all taxes or liens of whatsoever kind, at the consideration of one thousand dollars ( $1,000 ), the balance of the

stock and fixtures to be paid in cash, February 18, 1889. The said Dan Gunn & Co. transfer to Chas. Newcomb stock and fixtures, giving full possession, and guaranteeing same against all claims of whatever kind.    The said Chas. Newcomb furnishes abstract of title to real estate, and pays all taxes and claims against said property of whatsoever kind.    The said Chas. Newcomb assumes lease of first floor and basement of building now occupied by Dan Gunn & Co. at thirty-five dollars per month ; also, contracts to pay, in addition to said lease, at the rate of twenty-five dollars per year for remodeling front windows for the term of lease now on said room, said twenty-five dollars to be paid in advance on September 25, of each year.

"'DAN GUNN & Co.

"'CHAS. A. NEWCOMB.'

"*Third.*    That on the eighteenth day of February, 1889, Dan Gunn and T. M. Whittier, members of the firm of Dan Gunn & Co., plaintiffs herein, and the defendant, Chas. Newcomb, with one C. G. Atwood, met at the plaintiffs' place of business, and, without any other or different agreement from the written one hereinbefore set out, Dan Gunn proceeded to call off the stock of goods and fixtures, and affix prices thereto, and T. M. Whittier for the plaintiffs, and C. G. Atwood for defendant, wrote the same down as so called off by Gunn, and during such time the defendant went through the stock after Gunn, and examined the same, but took no part in fixing the prices called off by Gunn, and made no objection thereto except in two or three instances near the close of the work, when the defendant called Gunn's attention to certain values called off as being too high, and the same were lowered by Gunn, and so given off and written down. *Fourth.* That at the close of the calling off of the goods and fixtures, and affixing prices thereto, without progressing further, the defendant took with him to his home for the night one of the lists prepared by Whittier and Atwood, and also a key to the storeroom, given him by Gunn. *Fifth.* That the prices of the goods and

fixtures so called off and written down amount in the aggregate to the sum of twenty-one hundred and seventy-five dollars and five cents. *Sixth.* That the market value of the goods and fixtures at that time at Red Oak, Iowa, if removed from the building, and sold independently of the business therein conducted, and of the rights and privileges under the lease therefor, was the sum of twelve hundred and eight dollars, and thirty-three and one-third cents ; that the evidence does not disclose the market value if sold at the place of business, and in connection with the business hereinbefore conducted, and the rights and privileges under the lease therefor. *Seventh.* That prior to the listing and affixing prices of the goods and fixtures on the eighteenth day of February, 1889, there was no contract nor agreement between the plaintiffs and defendant by whom and in what way the goods and fixtures were to be inventoried ; nor by whom, nor upon what basis of valuation. the same should be appraised or valued. *Eighth.* That the defendant, on the eighteenth day of February, 1889, was not informed and did not know upon what basis of valuation the plaintiffs desired to appraise the goods and fixtures, nor was defendant informed, nor did he know upon what basis of valuation said goods and fixtures were being valued at that time. *Ninth.* That on the morning of the nineteenth day of February, 1889, the defendant returned the key to the store building to Dan Gunn, and refused to proceed further with the business, and told him that the goods and fixtures as appraised the day before amounted to so much that he could not make the purchase ; and later, on the forenoon of that day, offered the plaintiffs fifty cents on the dollar of the valuation made, and thereupon the parties proceeded no further in the matter."

The conclusions of law are stated as follows : "*First.* That by the agreement of sale entered into by the plaintiffs and defendant it was intended by the parties that an inventory of the goods and fixtures was to be taken upon the eighteenth day of February, 1889,

by some one or more persons to be agreed upon by them, and that an appraisement should be then made upon some basis of valuation to be thereafter agreed upon. *Second.* That the burden is upon the plaintiffs to show that an inventory was taken as contemplated by the written agreement, and that the goods and fixtures were appraised or valued by some one agreed upon by the parties, or by the parties themselves, upon a basis of valuation fairly and fully understood by the parties, and agreed to by them."

The findings of fact are not questioned, but it is insisted that the conclusions of law are not supported by them. The appellant insists that the price of the property was to be fixed at the time named for taking the inventory; that the acts of the parties show that they so understood the agreement, and that the inventory taken should be given the effect of an agreed price-list of the goods therein described. It may be conceded that the agreement contemplated that the goods should be invoiced and the prices settled on the eighteenth day of February, 1889. That date is fixed for the payment of the cash part of the purchase price; but the method of fixing the price was not specified. The manner of taking the invoice was not provided for, and neither party had a right to make an invoice which should be binding without the consent of the other. The conclusion is inevitable that the written agreement was not regarded by the parties as providing a means for ascertaining the inventory price, but that a supplemental agreement for that purpose was contemplated. The fact that the defendant was present when the invoice was taken, and went through the stock after Gunn, and examined it, and in two or three instances near the close of the work objected to the values given as too high, and that his representative wrote down a list of the goods and fixtures, with prices as they were called by Gunn, without more, does not show that he agreed to such prices. The special findings do not show that his employe, Atwood, was authorized to do more than to copy the statement of goods and prices

as given. They do show that prior to the listing of the goods there was no agreement between the parties as to the manner in which the property should be inventoried, nor as to the basis upon which it should be appraised. And when the inventory was taken the defendant did not know the basis upon which the prices were named. It must be presumed, in the absence of a showing to the contrary, that when the agreement was made it contemplated the fixing of reasonable prices. The facts found by the court tend as strongly to show that the defendant was examining the goods while the invoice was being taken with the view of ascertaining their value, and that he took with him for the night one of the lists prepared during the day to further consider the prices stated, before agreeing to them, as they do to show assent to or ratification of the prices as given. Certainly the defendant should not be held to pay for goods and fixtures nearly twice their market value upon the authority of equivocal acts alone.

It is said that the refusal of the defendant on the morning of the nineteenth day of February to proceed further with the business on the ground that the property appraised amounted to so much he could not make the purchase is evidence that the prices had been agreed upon as given in the lists. But we do not think that is a necessary conclusion. The offer made the same forenoon, of one-half the valuation named in the list, is as strong an indication that he did not consider himself bound to pay the list prices.

The first conclusion of law is criticised. We think that by fair interpretation it is in substantial harmony with what we have said. The judgment rendered necessarily includes a finding that the plaintiff had failed to show that the price of the property in question had been ascertained by agreement of parties.

We are of the opinion that the conclusions of law are sustained by the facts found.    AFFIRMED.