## KIKUCHI v. RITCHIE.

(Circuit Court of Appeals, Ninth Circuit. February 17, 1913.)

No. 2,165.

**1. ATTORNEY AND CLIENT (§ 96*)—CONTRACT OF RETAINER—CONSTRUCTION.**

A sealing vessel having been seized, condemned, and her master and crew confined under a conviction and commitment for violating the United States sealing laws, the master executed a written contract retaining plaintiff as proctor and attorney for the schooner, the captain, officers, and crew; plaintiff agreeing to appear as proctor in admiralty to resist the forfeiture of the schooner in the District Court of Alaska and to undertake to secure the discharge of the captain and crew from imprisonment. The contract provided that plaintiff was to receive $1,000 if the captain and crew were obliged to serve out their term of imprisonment, but the schooner was released on payment of $500 and costs, and, if the discharge of the captain and crew was secured before the expiration of their sentences and the entire prosecution and forfeiture abandoned and the schooner released without a fine, the attorney was to receive $1,500 and a deposit for costs, and, if the forfeiture case was appealed, the attorney was to receive such further compensation as should be agreed on with the owner. *Held*, that the first clause of the agreement by which plaintiff was retained as proctor and attorney in all matters arising out of the alleged law violation referred only to the services contemplated in the District Court thereafter specified in the contract, and not to services in the appellate court in case of an appeal.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 139, 186–189; Dec. Dig. § 96.*]

**2. ATTORNEY AND CLIENT (§ 134*)—CONTRACT OF RETAINER—BREACH—MEASURE OF DAMAGES.**

The general rule, that the measure of damages in case of an employer's breach of a contract for personal employment is the difference between what the employé received or might have received from others and the price agreed on, does not generally apply to breach of a contract for attorney's services, but did apply to a contract for the employment of an attorney to prosecute an appeal, which was broken by renunciation before anything was done under it and before performance became due.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 301–304; Dec. Dig. § 134.*]

**3. ATTORNEY AND CLIENT (§ 134*)—CONTRACT—CONSTRUCTION.**

An attorney's contract of employment, after providing that he should render certain services in the District Court of Alaska for the release of the captain and crew of a schooner and the discharge of the schooner from forfeiture, provided that if the forfeiture case was appealed the attorney was to receive such further compensation as might be agreed on with the owner. *Held* that, since the instrument left the amount

of compensation to be paid in case of an appeal to be determined by subsequent negotiation, the contract, so far as the appeal was concerned, was not complete, and the attorney could not recover damages for the client's employment of other counsel to prosecute the appeal.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 301–304; Dec. Dig. § 134.*]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Third Division of the Territory of Alaska; Edward E. Cushman, Judge.

Action by E. E. Ritchie against Choemon Kikuchi. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

The defendant in error brought an action against the plaintiff in error to recover damages for breach of a contract of employment as an attorney at law to render services for the plaintiff in error in certain litigation, alleging the value of the services which he was willing to have rendered, and which he would have rendered, had he not been prevented by the plaintiff in error. to be the sum of $1,800, of which $200 had been paid, and alleging his damages for the breach of the contract in that sum. The contract was in writing and was as follows:

"Valdez, Alaska, November 12, 1910.

"Matsutaro Numasaki, master of the schooner Tokai Maru, seized by United States officers as forfeited for violation of the Alien Fishing Law of the United States, hereby retains E. E. Ritchie as proctor and attorney for said schooner and her captain, officers and crew, in all matters arising out of the alleged law violation.

"The said E. E. Ritchie agrees to appear as proctor in admiralty to resist the forfeiture of said schooner, in the District Court of Alaska. He also agrees to undertake to secure the discharge from further imprisonment of said captain and crew, now confined in the federal jail at Valdez, Alaska, under an alleged conviction and commitment for violation of said fishing law. For the foregoing services it is agreed that said Ritchie is to receive the following compensation:

"If the said captain and crew are obliged to serve out their time and the release of said schooner is secured in the District Court of Alaska on payment of the fine of five hundred dollars and costs, the said attorney is to receive one thousand dollars ($1,000) American money. If the discharge of said captain and crew is secured before the expiration of their sentences and the entire prosecution and forfeiture abandoned and said schooner released without fine, said attorney is to receive fifteen hundred dollars, American money, and the $245 already deposited for costs. If the forfeiture case goes to the Appellate Courts said attorney is to receive such further compensation as may be agreed on with the owner.

"[Signed]   E. E. Ritchie.
"[And the captain's signature in Japanese.]

"Witness: W. Kino."

A demurrer to the complaint for want of facts sufficient to state a cause of action was overruled. Upon a trial had before a jury the defendant in error recovered judgment in the sum of $800.

Thomas R. Shepard, of Valdez, Alaska, and James Kiefer, of Seattle, Wash., for plaintiff in error.

John B. Van Dyke and Josiah Thomas, both of Seattle, Wash., and John Lyons and T. P. Geraghty, both of Valdez, Alaska, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GILBERT, Circuit Judge (after stating the facts as above). Error is assigned to the order of the court overruling the demurrer, and to the instructions of the court to the jury whereby they were told that the contract contemplated that the defendant in error, if the case went to the Circuit Court of Appeals, should represent the plaintiff in error in that court.

[1] The first clause of the agreement, whereby the defendant in error was retained as proctor and attorney "in all matters arising out of the alleged law violation," evidently refers only to the various services that were to be rendered in the District Court which were thereafter in the agreement specified, and not to services in an appellate court in case of an appeal. Kamm v. Stark, 1 Sawy. 547, Fed. Cas. No. 7,604; Berthold v. Fox, 21 Minn. 51; Hillegass v. Bender, 78 Ind. 225. It is not disputed that for all those services the defendant in error has received the compensation which was agreed upon. His right to recover in the present action depends upon the construction to be placed upon the final clause, which is:

"If the forfeiture case goes to the appellate courts said attorney is to receive such further compensation as may be agreed on with the owner."

[2] The general rule as to damages in cases of breach of contract for personal employment is that the employé can recover only the difference between what he received or might have received from others and the price agreed upon. But the contract of employment of an attorney by a client is recognized as an exception to the rule. One reason for the exception is that such service is not easily partible or apportioned to the time or the labor performed or to be performed by the attorney. Another reason is that often the most difficult and valuable services of the attorney to his client are rendered in advising him of his legal rights before any papers are prepared or appearances made in court. Another is that by the contract the attorney loses the possible opportunity of employment by the adversary party. Many cases hold that where, after preliminary services have been rendered under such a contract, the client without valid excuse discharges the attorney, the latter is entitled to recover the full contract price. Kersey v. Garton, 77 Mo. 645; Pennington v. Underwood, 56 Ark. 53, 19 S. W. 108; Walsh v. Shumway, 65 Ill. 471; Carter v. Baldwin, 95 Cal. 475, 30 Pac. 595; Moyer v. Cantieny, 41 Minn. 242, 42 N. W. 1060; Myers v. Crockett, 14 Tex. 257; Weeks on Attorneys at Law, § 366. But if it were conceded that the defendant in error here had a contract to render services on the appeal, none of the reasons on which the foregoing decisions are based would apply to the present case, for the contract was broken by renunciation before anything was done and before performance became due. The instrument, in referring to services on appeal, referred entirely to services that were to be rendered in the future. There is no allegation in the complaint that the plaintiff ever did render any services on the appeal. He rested his right to recover wholly upon the breach of his alleged contract for future services. In such a case the general rule should apply that the adverse party may recover only the damages occasioned by the breach, and not

the value of the services which he would have been called upon to render in the future.

[3] But as we read the agreement between the parties there was no contract with reference to any services to be rendered by the attorney after the final judgment in the District Court. The subject of the services to be rendered by him in case of an appeal was one upon which the minds of the contracting parties never met. The instrument shows that as to the appeal there was no present intention upon the part of the plaintiff in error to assume liability. Agreement is the essential element of every genuine contract. The terms thereof must be complete. Here there was no binding promise on the part of the attorney to render services and no promise on the part of the client to pay therefor. The matter of such subsequent employment and services, as well as the amount of the attorney's compensation, was by the instrument left open to future agreement. There is no ground for holding that the client thereby assumed liability for the payment of reasonable attorney's fees on the appeal. He never assented to that. He reserved the right, if he should thereafter call upon the defendant in error to take an appeal, to have the amount of his liability for attorney's fees first fixed and agreed upon, and therewith he reserved the right to reject the services if no agreement were made. An instrument which leaves the amount of compensation to be determined by subsequent negotiation is not complete. Wardell v. Williams, 62 Mich. 50, 28 N. W. 796, 4 Am. St. Rep. 814; Gunn v. Newcomb, 82 Iowa, 468, 48 N. W. 989. The plaintiff in error so understood the contract in this case and called upon the defendant in error to render no service on the appeal, but engaged other attorneys.

The judgment is reversed, and the cause is remanded, with instructions to sustain the demurrer to the complaint.

ROSS, Circuit Judge (dissenting). The record shows that the plaintiff in error, who was defendant in the court below, was the owner of a Japanese sealing schooner known as Tokai Maru, of which one M. Numasaki was master, which schooner was seized by a United States revenue cutter in the summer of 1910 for an alleged violation of the Alien Fishing Law of the United States. The captain, officers, and crew of the schooner, consisting of 38 persons in all, had been found guilty by the magistrate at Unalaska of violation of the law and sentenced to pay a fine of $500 each, which, under the statute, in the event of nonpayment, they were required to serve out in prison at the rate of $2 a day. In those circumstances the captain of the schooner employed the defendant in error, who was plaintiff in the court below, to render professional services; the contract between them, which was in writing, being set out in the opinion of the court.

Prior to the time of the making of the contract, proceedings had been instituted for the forfeiture of the schooner, in which proceedings a default judgment had been entered for the government, and after the making of the contract Ritchie sought and procured an order of the court vacating the judgment and permitting him to interpose a defense to the suit, and also sought to procure the discharge of the pris-

oners by means of the writ of habeas corpus. The writs were denied, and after a trial upon the merits the civil suit was decided in favor of the government and a final decree entered in accordance therewith against the schooner. The defendant, desiring to appeal therefrom, consulted, through his agent, with Ritchie in respect to such appeal, and the latter rendered some preliminary services in respect thereto, and was, according to the record, at all times ready and willing to take and conduct the appeal on the part of the defendant Kikuchi. He, however, told the latter's agent that if he would like to employ some one to assist him (Ritchie) in the matter of the appeal, he was willing that he should do so, but in that event wished to name the person, and suggested Mr. Sullivan of Seattle. Kikuchi, however, through his agents, determined to employ other counsel to take and conduct the appeal, and in pursuance of that determination sent to Ritchie the following letter:

"Seattle, Washington, March 21, 1911.

"E. E. Ritchie, Esq., Valdez, Alaska—Dear Sir: Your letter of March 8th to the Japanese Consul, of this city, has been handed to me. I do not see that you have any cause for complaint. My agent whom I sent out here did not see fit to retain Mr. Sullivan on the appeal for reasons which appeared to him fully satisfactory. Referring to our contract of November 12, 1910, I would say that your contract is to appear in the District Court and if you will examine the closing paragraph of the contract, you will see that the matter of appeal is to be subject to future contract or arrangement. No provision is made, as I read the contract, for your employment on appeal except by a further agreement.

"The expense of having you come out to San Francisco to attend this appeal would be prohibitive.

"I am sorry that you feel about the matter as you do, but I do not see that you have any cause to complain. You did your best in the trial court, and the court ruled against you. The owners have employed such counsel as they saw fit, and I do not see that you have any claim on them for compensation. Your agreement in the lower court was contingent. You failed, and I do not see that they owe you anything. We will endeavor to take care of the appeal and win, if possible.

"So far as the matter of costs is concerned, the costs will undoubtedly be paid out of the proceeds of sale and you will not be held on your cost bond.

"Yours truly,                                    M. Numasaki."

Subsequently Ritchie brought the present action against Kikuchi to recover, among other things, damages for the alleged breach of the contract, which action was tried with a jury and resulted in a verdict in the plaintiff's favor for $800, upon which judgment was entered, with costs.

The main contention on the part of the plaintiff in error is that by the written contract between the parties Ritchie "was retained to conduct only the trial court proceedings and the habeas corpus proceedings." The only other point made in the brief of the plaintiff in error is that the court below erred in admitting this testimony:

"Q. Why wasn't the exact amount of your fees fixed for your services in the appellate court, in case the case went to the appellate court? A. I explained to the captain at a great deal of length what was necessary to do for the trial of the case and also the possibility that it might be decided adversely to us in this court.

"Mr. Shepard. Before the contract was signed?

"Mr. Ritchie. Yes, before the contract was signed and at the time."

To that testimony objection was made and an exception taken to the ruling admitting it.

If it be conceded that the testimony was inadmissible, it amounted to nothing, and was entirely harmless, and therefore not sufficient ground for a reversal of the judgment.

Nor do I think that the construction of the contract contended for by the plaintiff in error can be sustained. The contract expressly declared that Ritchie is retained "as proctor and attorney for said schooner and her captain, officers and crew, in all matters arising out of the alleged law violation," and after reciting Ritchie's agreement to appear as proctor in admiralty in the District Court of Alaska to resist the forfeiture of the schooner, and his agreement to endeavor to secure the discharge from imprisonment of the captain and crew, and specifying the conditional compensation to be paid him for such services, the contract concludes with the provision that "if the forfeiture case goes to the appellate courts said attorney is to receive such further compensation as may be agreed on with the owner."

Manifestly this was not a provision for a further contract for services, as is contended on the part of the plaintiff in error. The retainer of Ritchie was expressly for his services in all matters growing out of the alleged violation of the statute; his compensation for services in the lower court being made contingent, and the compensation for his services rendered in the appellate courts such as should be agreed on with the owner of the schooner. It is not pretended that there was any failure of the parties to agree upon the latter compensation, nor that Ritchie gave the owner any cause for his discharge. In such circumstances the attorney was entitled to sue for damages for breach of the contract, or else abandon it and recover upon a general indebitatus assumpsit. See 9 Cyc. of Law & Procedure, 688, and the numerous cases there cited.

In my opinion the judgment should be affirmed.