MONAHAN, APPELLANT, *v.* ALLEN, RESPONDENT.

(No. 3,224.)

(Submitted February 14, 1913.   Decided February 28, 1913.)

[130 Pac. 768.]

*Real Property—Sale—Option Contracts—Definition and Requisites—Incompleteness—Effect.*

Options—Definition and Requisites.
   1.   An option, in legal effect, is a continuing offer to sell, convertible into a contract by acceptance within the time stated; therefore, to constitute a particular instrument an option, the terms of the offer must be such that, when accepted, the offer and acceptance will make a binding contract.

Same—Real Property—Incomplete Contract—Effect.
   2.   *Held,* under the rule above, that an offer to sell certain real property for a named price, the terms of payment to be "$5,000 cash at the time of the signing of deeds of conveyance and the remainder to be paid on the terms and under such agreements as may hereafter be

made," alleged by plaintiff to have been accepted by him "upon the terms set out in said option," was too vague, indefinite and uncertain to form a basis for a contract.

*Appeal from District Court, Park County; Frank Henry, Judge.*

ACTION by B. L. Monahan against F. W. Allen. Judgment for defendant and plaintiff appeals from it and an order denying him a new trial. Affirmed.

*Messrs. E. M. Hall* and *J. A. Poore,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Fred. L. Gibson* submitted a brief and argued the cause orally, in behalf of Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action for damages for the breach of a contract. The complaint alleges that on September 30, 1909, the defendant gave to the plaintiff an option in writing to purchase the Allen ranch, comprising 4,380 acres, at $10 per acre; that the option was to continue for thirty days, but within that period it was extended until December 1. A copy of the writing referred to is attached to the complaint. After reciting that the option to purchase is given to Monahan, and describing the land, the writing contains this principal clause: "It is hereby agreed that if the option for the purchase of the above property be exercised, that the terms for which shall be a payment of five thousand dollars ($5,000) cash at the time of the signing of deeds of conveyance and the remainder of the purchase price of $10.00 per acre shall be paid on the terms and under such agreements as may hereafter be made." It is further alleged: That after this writing was executed and delivered the defendant instructed plaintiff to deposit the first installment of the purchase price in any bank in Livingston; that thereafter, and on or about November 12, 1909, plaintiff notified defendant that

he accepted the offer to sell ''upon the terms set out in said option''; that on November 29 plaintiff caused to be deposited in the National Park Bank of Livingston the first installment of $5,000, notified defendant thereof, and demanded a deed conveying the property to a named purchaser, to whom plaintiff had resold the property; that on the twenty-third day of December, 1909, plaintiff and defendant agreed upon the terms and dates for the payment of the balance of the purchase price, as follows: $5,000 on January 1 of each year for six years, beginning with 1911, and the balance on January 1, 1917; deferred payments to be made at the National Park Bank of Livingston, and to draw interest at the rate of seven per cent per annum. The plaintiff's readiness and willingness to perform all the terms of the alleged contract, a breach by the defendant, and the special circumstances tending to show the amount of plaintiff's damages are then set forth. The answer is a general denial. Upon the trial, at the conclusion of plaintiff's case, the court granted a nonsuit and entered judgment for defendant for costs. From that judgment, and from an order denying him a new trial, plaintiff has appealed.

1. That the writing, a copy of which is attached to the complaint, is not a contract for the sale of the Allen ranch, both parties are agreed. While it bound Allen to sell, it did not bind Monahan to purchase. If anything, it was an option, by the terms of which Monahan had a right to purchase the Allen ranch on or before December 1, 1909. (*Snider* v. *Yarbrough,* 43 Mont. 203, 115 Pac. 411; *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.) Since an option, in legal effect, is a continuing [1] offer to sell, which is capable of being converted into a valid contract by acceptance, by the tender of the purchase price, or by the performance of the conditions named in the option, within the time stated and before the offer is withdrawn (*Ide* v. *Leiser,* above; *Gordon* v. *Darnell,* 5 Colo. 302), it follows that, to constitute a particular instrument an option, the terms of the offer must be such that, when accepted, the offer and acceptance will constitute a binding contract. The peculiar characteristics

of an option are not involved here; and neither are we concerned with all the essentials of a valid contract for the sale of real property. Speaking broadly, every express, executory contract, upon analysis, resolves itself into an offer by one party and an acceptance by the other (7 Am. & Eng. Ency. of Law, 2d ed., 125); and since an option is a continuing offer convertible into a contract by acceptance, it is subject to the same rules of law for determining its sufficiency as any other offer made in anticipation of the formation of a binding contract.

Our first inquiry, then, is: Was the offer made by Allen sufficient, so that, when accepted by Monahan, a binding contract for the sale of the Allen ranch resulted? The option was executed and delivered on September 30. Monahan testified that he accepted the offer, and notified Allen of his acceptance, about November 17. Paraphrased, Allen's offer is this: "I will sell you my ranch [describing it] for $43,800, payable $5,000 upon the execution of the deed, and $38,800 upon such terms and subject to such agreements as we may hereafter make." Monahan alleges that he accepted this offer "upon the terms set out in said option." In other words, Monahan agreed to purchase the Allen ranch for $43,800, agreed to pay $5,000 in cash upon the execution of the deed, and the further sum of $38,800 upon such terms and under such agreements as he and Allen might thereafter make. Allen did not offer to agree to any terms which Monahan might suggest, and neither did Monahan agree to submit to any terms which Allen might see fit to impose. Even the time for the execution of the deed and the payment of the first installment is not fixed. Nothing whatever is said as to whether Allen should be secured for the payment of the balance due, whether he should receive interest on the deferred payments, or whether the deed should be delivered to Monahan or to the named purchaser, when it was executed. Indeed, aside from fixing the price of the ranch and the amount of the first installment, all other terms were left for future negotiations. The recital that $5,000 was to be paid upon the execution of the deed, and the balance thereafter upon such

terms as might be agreed upon, negatives the idea that either party contemplated that the entire balance of $38,800 should be paid at once upon the execution of the deed; or, in other words, the idea that a cash transaction was in contemplation is completely disavowed. Viewed in the light most favorable to the appellant, the best that can be said is that Allen agreed to execute a deed within a reasonable time after receiving notice of Monahan's acceptance and upon receiving payment of the first installment of $5,000. But from any point of view Allen's offer to sell was conditional upon the ability of himself and Monahan to agree upon the terms for the payment of the balance of the purchase price. Such an offer is too vague, indefinite and uncertain to form the basis for a contract.

In 1 Page on Contracts, the author gives a critical analysis of a contract, enumerates the essential elements of an offer and discusses the subject of completeness, in section 27, as follows: ''An offer, even if intended to create legal relations, must be so complete that, upon acceptance, an agreement is formed which contains all the terms necessary to determine whether the contract has been performed or not.'' And by way of illustrating the same rule from the negative point of view the author says: ''An offer which leaves the amount of compensation to be determined by subsequent negotiations, fixing only the extreme limits within which the negotiations are to range, or one which leaves to a future valuation between the parties the price to be paid for realty or personalty, or one which leaves the quantity of material to be furnished, or the character of buildings to be erected, or the terms of payment and security for the purchase price, to be determined by future negotiation, is not complete.'' To the same effect is the decision in *Schenectady Stove Co.* v. *Holbrook,* 101 N. Y. 45, 4 N. E. 4, where it is said: ''Until an offer is made by one party, complete and definite in all material terms, it is not possible for another to make a valid contract by the mere acceptance of a proposition. In other words, so long as there remains any of the material conditions of a contract to be settled and agreed upon, no binding agreement exists.''

The acceptance, if of any efficacy whatever, must be coextensive with the offer. (1 Page on Contracts, sec. 45.) "An acceptance, to be good, must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed." (Knowlton's Anson on Contracts, 22; *Brophy* v. *Idaho P. & P. Co.,* 31 Mont. 279, 78 Pac. 493.) This being true, Monahan's acceptance must be construed to mean: "I will purchase the Allen ranch for $43,800 and pay $5,000 upon the execution of the deed, provided we can hereafter agree upon the terms for the payment of the balance." If, then, the offer is indefinite, and material terms are left for future negotiations, the acceptance, which must correspond with the offer, cannot aid it.

In 1 Story on Contracts, section 490, it is said: "In order to create a contract, it is essential that there should be a reciprocal assent to a certain and definite proposition. So long as any essential matters are left open for further consideration, the contract is not complete; and the minds of the parties must assent to the same thing in the same sense."

In *Long* v. *Needham,* 37 Mont. 408, 96 Pac. 731, this court stated the rule as follows: "An agreement to be finally settled must comprise all the terms which the parties intend to introduce. An agreement to enter into an agreement upon terms to be afterward settled between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled."

In *Bissinger* v. *Prince & Blackman,* 117 Ala. 480, 23 South. 67, it is said: "It is an elementary principle that there can be no valid contract without the mutual assent of the parties. Their minds must meet and concur as to all the essential elements of the contract involved, as to the subject matter, and as to their respective rights and duties." (See, also, 7 Am. & Eng. Ency. of Law, 2d ed., 113; *Etheredge* v. *Barkley,* 25 Fla. 814, 6 South. 861; *Watson* v. *Bayliss* (Wash.), 128 Pac. 1061.)

That Allen's offer and Monahan's acceptance of it did not conclude the negotiations was thoroughly understood by both parties. The writing, on its face, provides for further treaty

arrangements, and some of these negotiations were subsequently carried on. But if a contract for the sale of the Allen ranch was made between these parties at all, it was made when Monahan communicated his acceptance of Allen's offer; for the record discloses that there were not any other arrangements had prior to that time and none subsequently made, except as will be noted hereafter. That the terms left open for future negotiations were deemed important by both parties is apparent. Provision was made for the payment of only $5,000 of the $43,800 representing the purchase price of the ranch. Assuming that it sufficiently appears that Allen was to execute and deliver a deed to the property within a reasonable time after receiving notice of Monahan's acceptance and upon the payment of the first installment of $5,000, he would be required to transfer the title to a stranger, and that, too, without any security for the balance of $38,800, unless the question of security was comprehended within the terms which were left open for future negotiations; and that this was so, or, at least, was Monahan's understanding, is very clear, for he testified that the subject of security was discussed, but its determination was left open for negotiations to be had at a meeting to be held in January, which meeting never took place, and therefore the question of security was never settled. At the time of Monahan's acceptance the only terms agreed upon were the upshot price and the amount of the first installment. The other terms were left open for future determination, and because of this fact the offer and acceptance did not constitute a binding contract for the sale of the ranch. Upon principle, the following cases are in point: *Brown* v. *New York Central R. R. Co.*, 44 N. Y. 79; *Wills* v. *Carpenter*, 75 Md. 80, 25 Atl. 415; *Mattoon Mfg. Co.* v. *Oshkosh etc. Ins. Co.*, 69 Wis. 564, 35 N. W. 12; *Santa Rosa L. Co.* v. *Woodward*, 119 Cal. 30, 50 Pac. 1025; *Peet & Co.* v. *Meyer*, 42 La. Ann. 1034, 8 South. 534.

In *Krum* v. *Chamberlain*, 57 Neb. 220, 77 N. W. 665, there was presented the case of an offer to sell real estate with the entire price fixed, but the terms of payment and the security were left for future treaty. In speaking of the situation thus

presented, the court said: "So at this stage of the negotiations it is perfectly clear that both parties understood that the only things definitely determined upon were the price of the property, the rate of interest on the deferred payment, and the time when the transaction should be closed. A court could not enforce specific performance at the suit of either party, because it could not ascertain from the evidence how much of the purchase money should be paid in cash, for what amount a mortgage should be given, nor when the security should become enforceable."

In *Gunn & Co.* v. *Newcomb*, 82 Iowa, 468, 48 N. W. 989, the court was considering an offer to sell a stock of goods for an amount equal to the invoice price, to be determined by an inventory thereafter to be taken. It was held that an acceptance of this offer did not constitute a contract for the sale of the goods.

In *Wardell* v. *Williams*, 62 Mich. 50, 4 Am. St. Rep. 814, 28 N. W. 796, there was under consideration a question somewhat similar to the one now before us. Williams owned land which had been subdivided into lots. He offered to sell to Wardell the entire tract for a named amount, part cash and the balance secured by a mortgage upon the entire tract. In the offer there was contained a provision that the parties would thereafter fix a price for each lot, so that whenever the fixed value of a particular lot was paid it could be released from the mortgage. This offer was accepted, and in an action for damages for a breach of the alleged contract the question was presented: "Was there a valid contract between the parties?" The court answered the question in the negative, and in the course of the opinion said: "The offer, upon its face, looks to future action and negotiation between the parties to determine and agree upon the valuation to be placed upon the lots, which were to be released as their value so agreed upon should be paid upon the mortgage. * * * The memorandum shows, upon its face, that the minds of the parties had not met, and that it was not evidence of a completed agreement, but stated terms which, if

accepted, would be the foundation of further treaty between the parties with reference to essential particulars, which, when agreed upon, would form part of the contract of sale and purchase."

In order to determine whether Monahan's acceptance of Allen's offer constituted a contract for the sale of the Allen ranch, it is only necessary to inquire what effect the failure of the parties thereafter to agree upon the terms for the deferred payments, or the security to be given Allen, would have upon the transaction. Neither agreed to subscribe to any particular terms, and if their subsequent negotiations had failed, neither could have been charged with a breach of the contract. So long as the minds of the parties did not meet upon all the material terms of the contract, the contract was incomplete. (*La Compania etc. de Bilbao* v. *Spanish-American L. & P. Co.,* 146 U. S. 483, 36 L. Ed. 1054, 13 Sup. Ct. Rep. 142.)

In *Sibley* v. *Felton,* 156 Mass. 273, 31 N. E. 10, the court had before it an instrument executed by parties owning certain industries, looking to a consolidation of their business. The written instrument, after reciting the purpose to be accomplished and enumerating certain terms, provided that a complete plan of unification should thereafter be prepared and agreed upon. In speaking of this transaction the court said: "It is clear that on some things the minds of the parties had met, and on others they had not. The scheme or plan was not completed, and until it was there was no complete or final contract. Until then it was provisional and incomplete, and failure to agree upon the details or upon a complete plan would render all the preliminary agreements void."

Until all the material terms were agreed upon between Allen and Monahan, either party was free to withdraw from the negotiations and terminate the transaction. (*Dietz* v. *Farish,* 53 How. Pr. (N. Y.) 217; *Deshon* v. *Fosdick,* 1 Woods (U. S.), 286, Fed. Cas. No. 3819; 7 Am. & Eng. Ency. of Law, 2d ed., 139, note.)

In *Ridgway* v. *Wharton*, 6 H. L. Cas. 238, it is said: "An agreement to be finally settled must comprise all the terms which the parties intended to introduce into the agreement. An agreement to enter into an agreement upon terms to be afterward settled upon between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled. Until those terms are settled, he is perfectly at liberty to retire from the bargain." This language is quoted with approval in *Brown* v. *New York Central R. R. Co.,* above, and a portion of it in *Long* v. *Needham,* above.

The distinction is to be made between an agreement to enter into a specific contract, whose terms are fixed in advance, and an agreement to enter into some sort of a contract, if its terms can thereafter be agreed upon. In discussing this subject the supreme court of Minnesota, in *Shepard* v. *Carpenter,* 54 Minn. 153, 55 N. W. 906, said: "A contract between two persons, upon a valid consideration, that they will, at some specified time in the future, at the election of one of them, enter into a particular contract, specifying its terms, is undoubtedly binding; and upon a breach thereof the party having the election or option may recover as damages what such particular contract, to be entered into, would have been worth to him, if made. But an agreement that they will in the future make such contract as they may then agree upon amounts to nothing. An agreement to enter into negotiations and agree upon the terms of a contract, if they can, cannot be made the basis of a cause of action. There would be no way by which the court could determine what sort of a contract the negotiations would result in; no rule by which the court could ascertain whether any, or, if so, what, damages might follow a refusal to enter into such future contract. So, to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations."

Monahan testified that in December, 1909, he and Allen met and agreed upon the amounts and maturities of the remaining installments of the purchase price; that they agreed that Allen

should have security for the deferred payments, but the character of the security was left open for determination at a meeting to be held in January following.   The January meeting was never held, and the character of the security was never agreed upon.   Allen refused to proceed, and since there was not any binding contract he could do so without incurring liability.   If the January meeting had been held, but the parties had failed to reach an agreement as to the character and extent of the security which Allen should receive, all the prior negotiations would have ended with nothing accomplished.

2. It is beside the question to inquire whether the written option is a sufficient note or memorandum to meet the requirements of the statute of frauds.   Since there was not any contract, there could not be a note or memorandum of a contract, within the meaning of those terms as employed in the statute of frauds.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.