JOSEPHUS D. KRUM, APPELLANT, V. LORENZO H. CHAMBERLAIN ET AL., APPELLEES.

FILED DECEMBER 22, 1898.     No. 8557.

1. **Contracts.** That a binding contract may result from an offer and acceptance, it is essential that the minds of the parties meet at every point, and that nothing be left open for future arrangement.

2. ——: SPECIFIC PERFORMANCE. Specific performance of an alleged contract will not be enforced unless the court can clearly see upon what proposition the minds of the parties have met in a common intention.

3. **Vendor and Vendee:** CONTRACT: EVIDENCE. Evidence relied on to prove that negotiations for the sale of certain real property eventuated in a valid and enforceable contract, examined, and *held* insufficient for that purpose.

APPEAL from the district court of Johnson county. Heard below before BABCOCK, J. *Affirmed.*

*Sutton & Madison, J. H. Broady,* and *D. F. Osgood,* for appellant.

*C. K. Chamberlain* and *S. P. Davidson, contra.*

SULLIVAN, J.

This action was brought in the district court of Johnson county by Josephus D. Krum against Lorenzo H. Chamberlain to enforce specific performance of an alleged contract for the sale of real estate situated in the city of Tecumseh. The parties are brothers-in-law. The

plaintiff is the fee owner of the property in question and claims to have sold the same to the defendant. The evidence by which it is sought to establish the sale is contained in correspondence between the plaintiff and Charles M. Chamberlain, the son and authorized agent of the defendant. Replying to a letter written by Dr. Krum on April 8, 1892, Charles M. Chamberlain wrote as follows:

"TECUMSEH, NEB., April 11, 1892.

"DEAR UNCLE: Yours of the 8th inst. is at hand. We will accept your offer contained in the same, to take the corner lot with the house and lot adjoining on the north, for $2,000, are to have an option on the lot to the north of these at $500 additional, such option to stand for six months. We will make any arrangements that will be right about the payment. We do not consider it fair, however, to do this on the basis of what you had on foot about Judd Wright, as this was only a trade that was talked, and not a purchase at all. You may write what you think about terms, considering the transaction closed, we to make a payment and take possession at the expiration of the current term of lease to Carse, the papers to be delivered or deposited at that time.

"Yours truly,    . CHAS. M. CHAMBERLAIN."

The foregoing letter promptly elicited the following reply:

"SCHUYLER, COLFAX COUNTY, NEB., April 12, 1892.

"*Charles M. Chamberlain, Esq.*—DEAR NEPHEW: Yours of the 11th inst. is at hand, and contents noted. In reply would say that I gave you the terms for the property in my letter of the 8th inst., which terms in yours of the above date you have accepted. Our terms include the price of the property and the rate of interest on the amount to be left on mortgage, and the only further arrangement to be made is to fix the amount to be paid down, and the amount to be left on mortgage and the time it is to run. You can pay down $1,000 or $1,500, or

the whole amount if you choose; I wish further to say that Mr. Wright's offer was to buy the property as I have told you, and after my telling you that, I think it is very much out of the way for you to say 'this is only a trade that was talked, and not a purchase at all.' It was an offer to buy, and no trade about it. Write me at once the amount you wish to pay down, and the amount to be left on the mortgage and the time you wish it to run, so that we can make out the papers, and I will come down to Tecumseh to close the transaction next Tuesday, the 19th. Hoping you are all well, I remain yours very truly,        J. D. KRUM."

To this letter there was no immediate response, and on April 20 the plaintiff wrote a postal card, saying:

"DEAR CHARLIE: I wrote to you the 12th for you to tell me at once how much you wanted to pay down—how much left on mortgage and the length of time you wanted mortgage to run, so that we could have the papers made out, and then I would come down the 19th (yesterday) and close the transaction. I wish you would answer, as I have not heard a word from you.

"J. D. KRUM."

On April 25 Charles M. Chamberlain, replying to both the letter and postal card, said:

"DEAR UNCLE: I have yours of the 12th and 20th before me. The purchase is made for father and it will be necessary to hear from him before anything is done in the nature of making any obligation. Father will make no mortgage on the property. If you wish to accept short-time paper for a portion, this might suit him; otherwise he will arrange to make full payment. I should have answered you before, but have been away from home several days. In yours of the 12th you seem to take to heart what I said about the nature of the other offer you had on this property. If it was a sale as you claim, Mr. Wright's contract must have been to pay cash.

If you were to take anything either in exchange or as payment, other than cash, then it was an exchange of property or on values and was a trade, at least. This is my understanding of the meaning of the words, and on the strength of it I wrote what I did, as I knew what you were to receive for the property, which was a second mortgage on Lincoln and Pawnee City property, and which I believe could be purchased at less than face value. If I am off on that position, then I take it all back. However, we will try to arrange the matter to suit you. Father will, however, have to have a few days to arrange after he knows how much you want. My purchase of lumber yards has made Clarence and myself hard up for the time, otherwise could loan him the money, as money is very easy, but ten per cent is more than he would want to pay, and a lower rate made by us would cause dissatisfaction on the part of the other stockholders. You will, without doubt, understand my position. Let me hear from you and I will arrange to close the account at once.

"Your nephew,        CHAS. M. CHAMBERLAIN."

To this letter no reply was ever sent, and negotiations were not again resumed until the following November, when an unsuccessful effort was made to conclude the transaction. What transpired in November was shown for the purpose of aiding in the interpretation of the foregoing letters, which it is claimed evidence a contract of sale. While these matters were entirely proper to be considered, we cannot say, in view of the finding of the trial court, that any material circumstance tending to sustain the plaintiff's theory has been established by the proofs. His case stands on a construction of the correspondence. The intention of the parties is of course the decisive and controlling question. Did their minds meet upon a distinct and definite proposition so that nothing remained to be settled by treaty? That a binding contract may result from an offer and acceptance it is essential that the minds of the parties meet at every point

and that nothing be left open for future arrangement. It has been said "that an acceptance to be good must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed." (Knowlton's Anson, Contracts 22.) Bearing this principle in mind let us now look at the letters above set out. The letter written by Charles M. Chamberlain on April 11 certainly professes. to be an acceptance of a proposition which is therein loosely set forth; but when it is considered that further arrangements concerning payment are contemplated and a further communication on that subject solicited, it is evident that the writer intended only to accept the property at the price named by the plaintiff, assuming that there would be no difficulty in the adjustment of details. That the transaction was not to be a cash sale is demonstrated by the closing sentence where it is said that a payment is to be made and possession taken "at the expiration of the current term of lease to Carse," at which time the papers were to be delivered. Manifestly the payment here referred to is a partial payment. That it was so regarded, and that the amount of the deferred payment and the time when it should mature was left open for future settlement, is shown by the plaintiff's letter written on the following day, in which he says that "the only further arrangement to be made is to fix the amount to be paid down, and the amount to be left on mortgage and the time it is to run." He also adds: "You can pay down $1,000 or $1,500, or the whole amount if you choose." In the postal card of April 20 the plaintiff asks to be informed at once how much of the purchase price is to be paid in cash and how long the obligation for the balance is to run. So at this stage of the negotiations it is perfectly clear that both parties understood that the only things definitely determined upon were the price of the property, the rate of interest on the deferred payment, and the time when the transaction should be closed. A court could not enforce specific performance

at the suit of either party, because it could not ascertain from the evidence how much of the purchase-money should be paid in cash, for what amount a mortgage should be given, nor when the security should become enforceable. The letter written by Charles M. Chamberlain on April 25 did not remove the elements of uncertainty. It informed Dr. Krum that a mortgage would not be executed, but that the purchaser would give short-time obligations, or, in case that was not satisfactory, he would arrange to pay cash. This was a counter proposition to make payment in one of two ways. It called on the plaintiff to make choice and signify his acceptance. He was required to choose between cash and short-time notes, and was informed that the transaction would be closed within a few days after he should indicate his election. He failed to accept either proposition, and consequently the minds of the parties never came together in one and the same intention. The judgment of the district court denying specific performance is right and is

AFFIRMED.