GEORGE LOPEMAN, APPELLANT, v. GEORGE W. COLBURN ET AL., APPELLEES.

FILED NOVEMBER 6, 1908. No. 15,338.

1. **Vendor and Purchaser:** CONTRACT: ACCEPTANCE. In order to convert an offer into a contract to sell real estate, the vendee must accept the offer as made.

44

2. ———: ———: ———. Acceptance of an offer to sell land, but fixing a place other than the residence of the vendor, or the place named in the offer, for the payment of the consideration and delivery of the deed, is not an unconditional acceptance so as to bind the vendor.

3. Specific Performance: DISCRETION OF COURT. "Courts of equity will not always enforce a specific performance of a contract. Such applications are addressed to the sound legal discretion of the court, and the court will be governed, to a great extent, by the facts and merits of each case." *Morgan v. Hardy*, 16 Neb. 427.

APPEAL from the district court for Merrick county: JAMES G. REEDER, JUDGE. *Affirmed.*

*Harrison & Prince* and *Patterson & Patterson,* for appellant.

*Martin & Ayres, contra.*

ROOT, C.

Suit for specific performance of an alleged contract for the sale of 200 acres of land situated in Merrick county. Decree for defendants, and plaintiff appeals.

Although, pending the negotiations between plaintiff and George W. Colburn, an attempt was made to vest title to the real estate in controversy in Lyde Colburn, wife of George W. Colburn, we shall treat the subject matter as if George W. Colburn had not conveyed the land, and shall refer to him as the defendant. The land is not described by section in the correspondence of the parties, but the evidence discloses that defendant owned no other land in Nebraska. Defendant had resided many years on the farm; but, because of failing health, had removed to California. Plaintiff had written him concerning the land, but received no definite offer till September 18, 1904, upon which date defendant wrote, signed and mailed to plaintiff a letter containing the following statements: "I have concluded to let you have the place if I can obtain possession the 1st of March. You ask my

terms. The amount you offer to pay the 1st of March is all right. There are a few other things there that I didn't mention. There is a Singer sewing machine that cost me $60, nearly new, that also goes in. Now, about the terms. Now, will make you an offer if you want my place at $42 an acre (2,000) down, two thousand dollars down. I will make the yearly payments to suit; also let you have all the implements stuff mentioned in that letter for the small sum of $150, $300 worth of stuff." Plaintiff's letters to this date were not offered in evidence, nor their contents disclosed, but he evidently wrote suggesting some change in the terms of any contract he might make for the purchase of the land. January 15, 1905, defendant again wrote, signed and mailed plaintiff a letter as follows: "The reason I haven't answered your letter was I didn't like to wait two years for second payment. I have two other parties who want the place. They will make a payment each year. If you can pay $2,000 down, and $500 on the second and third, and the 4th year $1,000, the 5th year $500, the 6th year $1,000, the 7th year $500, the 8th year $1,000, the 9th year $500, the 10th year $1,000, making in ten years time. Of course, you take the place as it is, things and all, and if Johnson stays there he can pay the rent to you. Make arrangements with Johnson and take the place on these terms with interest at 6." Plaintiff testified that he wrote two or three letters to defendant unequivocally accepting said proposition, but that he received no answer thereto. Defendant denies having received the letters. Plaintiff's wife testified that she saw the letters, and that they stated, in substance, that defendant should come at once and close up the deal; that his $2,000 was ready and the payments were all right. We think it proper to eliminate those letters from a consideration of this case, because, if sent, they required defendant to come to Nebraska to close up the deal and receive his consideration. June 24, 1905, plaintiff wrote, signed and sent to defendant a letter, which was duly received, and is as follows: "Will write you again as this is the 3

letter that I have written to you since I got your letter
and the terms and interest is all right and Johnson and
me can arrange the other matters between him and me.
I wrote you after receiving your letter and also wrote to
John Colburn (defendant's brother and agent) that I
would be up the next week expecting that John would.
look after your business and have not heard from you
since. * * * The place and things on the place and
terms of payment and interest is all right and want the
privilege of paying more if I can each year." Defendant
did not answer this letter till August 6, upon which date
he wrote, signed and sent to plaintiff a communication as
follows: "I ask to be excused for not answering your let-
ter sooner. You say you have written two letters before
this one and wonder why I have not answered them.
Something must have happened them, for I never got
them. * * * Now in regard to the place I have a copy
of the proposition I sent you. It seems hard to close up
a deal. Some way my folks are kicking about my selling
it. Now I want to know if you are willing to pay my fare
back there. I will pay the return trip if the deal is closed
up or in other words if the deal is made. I think you
understand how it is, so let me know right away, would
say if in any way it should be my fault that the deal is
not made in according with the proposed plan, I will pay
my expenses. If it be your fault then you are to pay fare
both ways." To this letter plaintiff wrote, signed and
sent through the mails to defendant the following under
date September 23, 1905: "Your letter at hand some days
ago and will answer $8,500 hundred dollars for place
things and all, you give me those things that you throw in
tools and machinery and things that belong to the place.
Send contract to me that you hold against Johnson and
you make out the deed and send it to Central City as that
will be the place to make out the papers and $2,000 two
thousand is ready for you and these notes yearly; First,
1906, $500; 2 year, 1907, 1,000; 3 year, 1908, 500; 4,
1,000; 5, 500; 6, 1,000; 7, 500; 8, 1,000; 9, 500. (The fig-

ures are tabulated in the letter.)    Total 85 hundred.    I
want the notes drawn on or before.    You can have some
man do the business for us.    Justice of the peace or judge
at Central City.    You can come if you wish.    Would like
to meet you very much but can't afford to pay you."
January 12, 1906, defendant again wrote to plaintiff,
which letter was received by him, as follows: "It has been
some time since I got your letter, but my wife has been
sick so it was uncertain when I would come, and I also
understood you that I would get notice from the bank at
Wood River in regard to the deposit you made there for
me, but if you want to close up the deal at once you see
my brother John.    He has the power of attorney to do any
business for me.    You pay him the $2,000 and my fare
$45 and the place is yours according to contract, and I
will come back when the weather gets warm and woman
gets better.    Would say to you if you want the place you
better go down and see Bro. John right away and have
him draw or get contracts drawn up and have the matter
settled as there are other parties that will pay me a $1,000
more than you are paying me on the same terms but we
have talked so long about it I wouldn't feel right to sell
it to anybody else without your consent it wouldn't be
long before you would get possession.    Now I feel a little
ashamed that this has dragged so long, but one thing I
hated to give up the place.    * * *  P. S.    Please don't wait
as long as I have but let me know right away.    I just got a
letter from a man at Central City, Neb., he wants me to let
him know right away."    February 7, 1906, plaintiff de-
posited with the First National Bank of Wood River $45
to the credit of defendant, "subject to close of sale of land
near Palmer, Neb.; above money being to pay Colburn's
expenses from Cal. to Wood River, Neb."    On the same day
the bank's written memorandum evidencing said deposit
was inclosed with a letter written by plaintiff and sent to
defendant.    The letter is as follows:    "As I am at home
and will say that your money 45 dollars to pay your fare
one way is deposited in bank and you will find a note in

my letter with the banker's name on it and I am ready to close up the deal. Come at once, come to Wood River, and I will meet you there with a team. Say Colburn can't you send me a short telegram to Wood River ahead and then I can meet you and also write me. Please come at once. I will register this to you so you will be sure and get it. The telegram you just send it to Wood River and I will make arrangements with the agent here to send it to me so you can just give me date when you will be here."

Plaintiff claims that he offered John Colburn $2,045 on the 12th of February, 1906, but that Colburn refused to accept, and disclaimed any authority to take it. John Colburn and his brother Hiram testified that plaintiff merely stated that he had deposited $45 in the Wood River Bank to pay defendant's fare, and requested John Colburn to execute the contract, which he refused to do. The testimony on this point seems to preponderate in defendant's favor, and we find this issue of fact against plaintiff. March 15, 1906, plaintiff commenced this suit. What then were the rights of the parties? Plaintiff insists that his letter of June 24, 1905, was an acceptance of defendant's former offer, and, in connection therewith, constituted a contract, but we do not so understand the record. Plaintiff expressed himself as satisfied with defendant's terms, but did not say that he would take the place, but requested a change in the terms of payment. The subsequent conduct of the parties clearly indicates that they considered negotiations incomplete. Defendant then suggested in the letter of August 6, 1905, that plaintiff ought to pay car fare from California to Nebraska, and that, if the deal should not be closed because of defendant's fault, plaintiff would retain his money, but, if plaintiff was in fault, that defendant's fare should be paid coming from and returning to California. In the letter of September 23, plaintiff offers $8,500 for the farm if certain tools and machinery are included in the deal, and offers to make the third payment $1,000, instead of $500, as stated in defendant's letter, requests that the

notes for deferred payments be drawn "on or before," indicates that the deal must be closed and money paid in Central City, and refuses to pay plaintiff's fare. It is clear that to this point the parties had not agreed upon the terms of a contract. It is also clear that it was not the province of the vendee to compel the vendor to deliver the deed and receive the consideration in Central City. *Veith v. McMurtry*, 26 Neb. 341; *Northwestern Iron Co. v. Meade*, 21 Wis. 474, 94 Am. Dec. 557; *Egger v. Nesbitt*, 122 Mo. 667, 43 Am. St. Rep. 597. Defendant in the communication of January 12, 1906, explains that his wife has been sick, and that he has been waiting to learn whether the railway fare has been deposited in the bank at Wood River, and then finally instructs plaintiff that, if he will pay $2,045 to John Colburn for defendant, the farm will be plaintiff's "according to contract"; that John has a power of attorney to act for him, and that he will come in person as soon as the weather becomes warm, and will then make the deed. The correspondence seems to point to other letters not in evidence, but we cannot speculate as to their contents. The fact is that plaintiff did not pay or offer to pay this money to John Colburn for defendant, nor did he ever notify defendant that he would do so. His telegram and letter merely notified defendant that the railway fare was in the bank, and requested him to come at once and close the deal. The last letter from defendant sufficiently informed plaintiff that he must be prompt, and that other persons had offered to pay more for the farm. Nothing has been paid to defendant, nor has plaintiff had possession of the land. We cannot say from the evidence before us that the minds of the parties ever met with a common intention, and for that reason the district court did not err in finding for the defendants. *Morgan v. Hardy*, 16 Neb. 427; *Krum v. Chamberlain*, 57 Neb. 220.

We therefore recommend that the judgment of the district court be affirmed.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.