Smith v. Bertrand.

---

CYRUS E. SMITH ET AL., APPELLANTS, V. CHARLES
BERTRAND, APPELLEE.

FILED DECEMBER 21, 1921. No. 21835.

1. **Brokers:** SALE OF LAND. A letter which merely states the terms upon which the owner is willing to sell his land does not empower the person addressed to execute a contract in the owner's name for the sale of the land. *Ross v. Craven*, 84 Neb. 520.

2. ———: ———: OFFER: ACCEPTANCE. It is elementary that an acceptance of a written offer to sell land, in order to create a contract, must conform strictly to the terms of the offer. *Ross v. Craven*, 84 Neb. 520.

3. **Ratification** by defendant of an alleged contract for the sale of land is not shown in the record.

APPEAL from the district court for Franklin county: WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

*John F. Cordeal,* for appellants.

*J. L. McPheely, contra.*

Heard before LETTON, DEAN and DAY, JJ., CLEMENTS (E. P.), District Judge.

DEAN, J.

Plaintiffs sued for the specific performance of an alleged contract for the sale of land. The court dismissed the suit, and they appealed.

Substantially these facts were developed at the trial: In 1918 defendant was the owner of a quarter section of

farm land in Hitchcock county. September 16, 1918, W. S. Graves, a real estate agent, sent this letter to Bertrand:

"Palisade, Neb. Sept. 16, 1918. Mr. Charles Bertrand, Upland, Neb. Dear Sir: Do you own or control the S. W. 1/4 of 7-3-32? If so, is it on the market? Would like to have it on my list, as I am making out a new list. Inclosed find stamp and a description card. Please return card and I will try and get your price. My commission will be $1.00 per acre. Please mention terms. Yours truly, W. S. Graves."

To which Bertrand replied:

"Upland, Neb. Sep. 17-1918. Mr. W. S. Graves, Palisade, Neb. Dear Sir: Your letter inquiring of my land, the S. W. 1/4 7-3-32 at hand. Will say I will sell for $4,000 net to me, 2,000 down, balance 5 years at 7% This offer is for 90 days. Resp., Charles Bertrand."

September 19, 1918, plaintiffs offered $4,500 for the land, through Graves, who drew up a sale contract. The contract is a lengthy instrument. It provides, *inter alia,* that plaintiffs shall pay $500 earnest money as a part of the purchase price, and $2,500 on approval of abstract and deed, the remaining $2,000 to be paid by a $2,000 note and mortgage due on or before five years, with 7 per cent. annual interest. It provided, too, that defendant should have 30 days in which to procure and furnish an abstract and execute a deed. A reasonable time was reserved in the contract for plaintiffs to examine the title. Provision was also made "that all papers and money in connection with this transaction shall be deposited in escrow with the Frenchman Valley Bank of Palisade, Nebraska, and both parties hereof authorize said bank to deliver money and papers" to the respective parties as designated in the contract. Graves signed defendant's name by himself as "special agent." Plaintiffs also signed the instrument.

September 19 Graves wired defendant that he had sold the land in suit pursuant to defendant's letter of Septem-

ber 17. The next day Graves wrote defendant requesting him to send the abstract "to the Frenchman Valley Bank, Palisade, Neb., and we will have extended." September 24, 1918, defendant wrote Graves that his wife "insists on not wanting to sign the deed." December 21, 1918, Graves went to Upland and saw defendant. This was two or three days after the expiration of the offer contained in defendant's letter of September 17, 1918. On that date Graves tendered the $2,000 payment which is referred to in the contract. Respecting this interview Graves testified that, with respect to the tender, defendant said "he would not take it, he would not accept it," and that in the same conversation defendant said, "My wife won't sign the deed." Graves did not tender a note. or a mortgage to defendant. The record does not disclose any authority given by defendant to Graves to do anything with respect to the land other than that contained in his letter of September 17, 1918.

It is argued that defendant's letter of September 17 authorized Graves to enter into a written contract with plaintiffs, in defendant's behalf, for the sale of the land. We do not think so. It plainly appears from a comparison of the letter, and the contract as prepared by Graves, that the latter far exceeded the terms submitted in Bertrand's letter. The contract assumed to provide that the unpaid purchase price should be payable on or before five years, and it provided for a deposit of the papers in escrow. All of this and other provisions in the contract, as prepared by Graves, were unauthorized by defendant. And, besides, no tender of a note or mortgage was made at any time to Bertrand. In passing, it may be noted that the alleged tender was not made within the time specified in the letter of September 17, 1918. As pointed out in the decree of the learned trial court, the instrument purporting to be a contract between plaintiffs and defendant was not an acceptance of defendant's offer, but was in fact a counter offer, which was refused by defendant.

It is elementary that an acceptance of a written offer to sell land, in order to create a contract, must conform strictly to the terms of the offer. A letter which merely states the terms upon which the owner is willing to sell his land does not empower the person addressed to execute a contract in the owner's name for the sale of the land. *Ross v. Craven*, 84 Neb. 520. Ratification by defendant of an alleged contract for the sale of land is not shown in the record.

The judgment of the district court is right, and is in all things

AFFIRMED.