CLEMENT OLMSTED ET AL., APPELLANTS, V. JULIA A. CALDWELL ET AL., APPELLEES.

FILED MARCH 27, 1923. No. 22292.

1. **Contracts.** In order to constitute a contract, for the breach of which damages may be recovered, the minds of the parties must have met upon every essential element of the contract, leaving nothing open to be determined by future arrangements, unless the contract itself so provides.

2. **Vendor and Purchaser:** CONTRACT: EVIDENCE. Evidence examined, and *held* not to establish that a contract of sale of land was entered into between the plaintiffs and defendants.

APPEAL from the district court for Saline county: LEONARD W. COLBY, JUDGE. *Affirmed.*

*R. M. Proudfit,* for appellants.

*B. V. Kohout* and *L. O. Williams, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and DEAN, JJ., RAPER, District Judge.

LETTON, J.

This is an action brought to recover damages for the breach of an alleged written contract for the sale of land, alleged to have been made by the exchange of certain letters between the plaintiffs and defendants. A jury was waived and the cause tried to the court, which found generally for defendants. Plaintiffs appeal.

The first letter was written May 7, 1919, by Clement

Olmsted to the defendant, Julia A. Caldwell, and is as follows:

"Mrs. Julia Caldwell:

"Just a line in regarde ove that farm ove yours that joines Tobias I under stand that you would like to Sell it ef you od Drope me aline and let me know what the least dollar that will buy it and what Termes that you want and I will try and Find a buyer. Let me know in a few days, if you do not care to sell or if you do I think I can get 130 on acre and maybe 135.

"Frome   Clement Olmsted, Friend, Nebr.

"P. S. Dont waite to long if you care to sell as I think I can sell this farm."

This letter evidently solicits an agency to sell the land and is not an offer to purchase. Mrs. Caldwell in return wrote Mr. Olmsted: "In regard to selling the farm if you will write· my son in Peoria he will correspond with you and explain as to what you want to know"—giving· his address. On May 15, 1919, plain·tiffs, in the name of Olmsted Bros., wrote defendant John F. Caldwell as follows:

"Dear Sir:

"I have written to your mother about her farm near Tobias, Nebr., and she has requested that I. write you about it. I believe I can find you a buyer at around $130 to $135 per acre if you can give good terms and would expect you to pay me a commission in case I make a sale for you. Please let me hear from you return mail. Yours truly,

"Olmsted Bros."

On May 17, 1919, John F. Caldwell answered as follows:

"Gentlemen:

"I have your letter of May 15th in regard to price on my mother's farm near Tobias. Will say this farm is for sale but will have to net her $150 per acre; $10,000 cash, the balance a first mortgage and would not be willing to give you more than thirty days option at

this price. Yours truly,

"Jno. F. Caldwell."

In response to this letter, in May, Caldwell received a letter from a banker inclosing contracts of sale, in duplicate, between Julia A. Caldwell and Clement. Olmsted, signed by Clement Olmsted, and asking Caldwell to have his mother sign and return the contract as soon as possible, also requesting abstracts to be furnished. On May 31 John F. Caldwell wrote Olmsted Bros., as follows:

"Gentlemen:

"I am returning contract and check submitted by C. Olmsted. On consulting the various heirs of my father's estate, I find that they do not care to consider selling at this time. You doubtless are aware of the fact that mother has only a life estate in the land and cannot sell without the consent of all the heirs. Moreover, the terms of the contract as submitted would not be satisfactory to mother even had the other heirs been willing to sign. Therefore you may consider negotiations at an end. Very truly yours,

"John F. Caldwell."

Clement Olmsted testified that, at the time the letters to Mrs. Caldwell and to John F. Caldwell were written, he knew the value of the land was about $200 an acre, and it was stipulated "that at the time of writing said letters and for 40 days thereafter said land was worth $200 an acre, and there were 220 acres of land in that tract intended to be purchased."

At the conclusion of the testimony of Clement Olmsted, who was the only witness examined, both parties rested.

It is very apparent that, in the letters which initiated the correspondence, plaintiffs were soliciting employment as commission agents to sell the land. The purport of the letter of John F. Caldwell, dated May 17, was to accept their services, but fixing a different price than that suggested by them. Occupying the re-

Olmsted v. Caldwell.

lation of agents, it was the duty of plaintiffs, if they desired to purchase for their own account, to fully and fairly disclose to their principals the actual facts with respect to the value of the land and their desire to purchase for themselves. At the time these letters were written they knew that the land was worth $200 an acre; they were endeavoring to obtain it for $130 or $135 an acre, and finally attempted to buy it themselves at the price of $150 an acre, without disclosing its true value. Even if the letters are construed as a definite contract for the sale of the land, a contract entered into under such circumstances would be subject to rescission by the vendor upon obtaining knowledge of the true facts.

It is claimed, however, that, since Mr. Caldwell assigned as a reason for refusing to enter into the contract the fact that the heirs were not willing to sell and that his mother only had a life estate in the land, he cannot afterwards change his position by alleging that the relation existing between the parties, if any, was that of principal and agent. Even if this be granted, the evidence does not establish that the minds of the parties ever met as to all the necessary elements of a contract. The time for which the mortgage was to run, the rate of interest on deferred payments, the number of acres to be sold, the gross price for the property, and the time and place of payment, are not mentioned in the letter of Mr. Caldwell. In addition to this, the time of possession, the nature of the title to the property which must be shown by the abstract, or even whether an abstract was to be furnished, were all left indefinite. The contract submitted by Mr. Frantz contains a number of these elements which were lacking in the letter of May 17 of John F. Caldwell, and constituted in fact a counter proposition to Caldwell which was never accepted by him. In order to constitute a binding contract, it is essential that the minds of the parties meet at every point, and that nothing be left open for ar-

rangements to be made in the future, unless, as sometimes happens, the contract itself makes provision for the ascertainment and insertion in the contract, as finally written, of some fact which may and is to be made certain before final consummation. *Krum v. Chamberlain,* 57 Neb. 220; *Lopeman v. Colburn,* 82 Neb. 641. The minds of the parties never met upon the same intention, no common assent was made to the same contract, and hence there was no right of action on the part of the plaintiffs.

The judgment of the district court was clearly right, and is

AFFIRMED.