SPIVEY et al. v. SANER–RAGLEY LUMBER
CO. et al.　(No. 777—4074.)

(Commission of Appeals of Texas, Section A.
May 19, 1926.)

**1. Appearance ☞25—Judgment ☞106(1)—
Defendant, appearing, but saying nothing in
bar or preclusion of action, impliedly confess-
es judgment and waives errors of pleading or
proof, except those as to which record shows
contrary intention.**

Defendant, appearing in civil action, but
saying nothing in bar or preclusion thereof,
impliedly confesses judgment and waives all
errors of pleading or proof, except such as ap-
pear from record were not intended to be
waived, and judgment nil dicit may be taken
by plaintiff.

**2. Appearance ☞8(3)—Judgment ☞106(1).**

Filing plea of privilege constitutes appear-
ance and places defendant in court; and where
plea is sustained and cause transferred, and de-
fendant files no further pleading, judgment nil
dicit is authorized.

**3. Appearance ☞12.**

Defendant, having appeared in suit, is pre-
sumed present in court, and cognizant of all
subsequent proceedings in cause.

**4. Appeal and error ☞865.**

In reviewing nil dicit judgment, court will
not examine petition to determine legal suf-
ficiency of its averments to state cause of ac-
tion.

**5. Appeal and error ☞934(3)—In reviewing
nil dicit judgment, defendant will not be pre-
sumed to have intended to confess liability to
extent covered by judgment, and to which pe-
tition shows no cause of action.**

In reviewing nil dicit judgment, if plaintiff's
petition shows on its face no cause of action
to extent covered by judgment, defendant's in-
tent to confess liability to extent not shown
will not be implied.

**6. Judgment ☞92—Nil dicit judgment is dis-
tinguished from judgment by default, in cases
where defendant has answer actually on file,
but fails to call it to attention of court.**

Nil dicit judgment is distinguished from
judgment by default, in cases where defendant
has answer actually on file, but fails to call it
to attention of court, as, in such cases, fact of
answer leaves no room for implied confession
of judgment on issues of fact purported to be
raised by petition.

**7. Landlord and tenant ☞24(1)—Provisions
of contract allowing number of trees which
were to be exploited for turpentine subse-
quent to first season to future determination
held not to create enforceable agreement.**

Where contract gave right to put certain
number of turpentine cups on tract during first
season, provisions leaving amount of addition-
al timber to be exploited for turpentine after
first season to future determination held not to
create enforceable agreement.

**8. Judgment ☞112—Failure to plead by one
charged with wrongfully preventing carrying
out of contract held to import confession of
primary liability for tort.**

Where petition for breach of contract by
one defendant also charged another defendant
with wrongfully preventing plaintiff from car-
rying out contract and securing its benefits, im-
plied confession of judgment, arising from fail-
ure to plead, held to import confession of pri-
mary liability of latter defendant for tort,
though petition also sought, in the alternative,
to charge him with liability for breach of war-
ranty of authority to contract for the first de-
fendant.

**9. Judgment ☞112—Where plaintiff obtains
nil dicit judgment in case of unliquidated dam-
ages, amount claimed in petition is not taken
as confessed.**

Where plaintiff obtains nil dicit judgment
in case of unliquidated damages, amount claim-
ed in petition is not taken as confessed, but
writ of inquiry may be awarded as in cases of
judgment by default.

**10. Damages ☞199.**

Where plaintiff obtains nil dicit judgment,
defendants cannot complain that damages were
assessed by court without aid of jury on writ
of inquiry.

**11. Judgment ☞112.**

Where plaintiff obtains nil dicit judg-
ment for unliquidated damages, defendant will
not be presumed to have waived insufficiency of
evidence to support amount of recovery.

**12. Landlord and tenant ☞48(2)—In action
for breach of contract to cup timber for tur-
pentine, evidence held insufficient to sustain
judgment for amount of damage alleged in
petition.**

In action for damage for breach of contract
to exploit timber for turpentine, under which
plaintiff was entitled to 75,000 cups during first
year, which was only enforceable part of con-
tract, evidence, failing to show what profits
would have accrued from that number of cups
or expense of operations pertaining thereto,
held insufficient to sustain judgment.

Error to Court of Civil Appeals of Ninth
Supreme Judicial District.

Action by J. H. Spivey against the Saner-
Ragley Lumber Company and another, in
which, on the death of the plaintiff, his heirs
were substituted as parties plaintiff.　Judg-
ment was rendered for plaintiffs, and defend-
ants applied to the Court of Civil Appeals
for writ of error, which court dismissed the
application (230 S. W. 878), and defendants
brought error to the Supreme Court, which
reversed the judgment of the Court of Civil
Appeals and remanded the cause to that court
for disposition (238 S. W. 912).　Judgment
of trial court was reversed, and the cause
remanded by the Court of Civil Appeals (255
S. W. 193), and plaintiffs bring error.　Af-
firmed in part, with instructions, and in oth-

er respects reversed, and judgment of trial court reformed, and affirmed, as so reformed.

Feagin, German & Feagin, of Livingston, Smith & Crawford and Oswald S. Parker, both of Beaumont, and W. E. Masterson, of New York City, for plaintiffs in error.

P. R. Rowe, of Livingston, J. G. Woolworth, of Carthage, Dean & Humphrey, of Huntsville, and Charles L. Black, of Austin, for defendants in error.

HARVEY, P. J. This is a suit brought originally by J. H. Spivey against the defendants in error the Saner-Ragley Lumber Company and W. C. Ragley for damages in the sum of $75,000, resulting from a breach of contract and the wrongful prevention of the plaintiff from carrying out his part of the contract and securing the benefits therefrom. The plaintiff's petition reads as follows:

"Comes now J. H. Spivey, plaintiff herein, and complaining of Saner-Ragley Lumber Company, a Texas corporation, with its domicile and principal office at Carmona, Polk county, Tex., hereinafter for convenience called the company, and of W. G. Ragley, whose residence is to plaintiff unknown, but who is temporarily to be found in Polk county, Tex., respectfully shows:

"(1) That on and immediately prior to November 28, 1914, the said company, acting through the defendant W. G. Ragley, who was at that time and now is treasurer and general manager of said company and its managing director negotiated with this plaintiff, J. H. Spivey, a resident of Jefferson county, Tex., who was then engaged in the turpentining operations at and in the vicinity of Voth, in Jefferson county, Tex., with a view to his removing his plant and equipment to the property owned and controlled by the defendant company in Polk county, Tex., represented by the defendants to aggregate approximately ten thousand seven hundred (10,700) acres of virgin, long-leaf yellow pine, and continue operating his turpentine business upon said timber last mentioned under arrangement which would produce a substantial revenue to the said defendant company and to the defendant W. G. Ragley, the principal stockholder, managing director, who was, at that time, and still is, the treasurer and general manager of said company, such negotiations culminating in a contract being duly executed in Jefferson county, Tex., on, to wit, November 29, 1914, by and between this plaintiff and the defendant company, acting by and through the defendant W. G. Ragley, aforesaid, same being in words and figures substantially as follows, to wit:

" 'Agreement entered between the Saner-Ragley Lumber Company of Carmona, Tex., and J. H. Spivey of Voth, Tex., the Saner-Ragley Lumber Company, party of the first part, enters into an agreement with J. H. Spivey, party of the second part. J. H. Spivey, party of the second part agrees to pay the Saner-Ragley Lumber Company party of the first part, six cents per cup per year for the first year. J. H. Spivey agrees to put in from 50,000 to 75,000 cups the first year or the coming season of 1915. J. H. Spivey agrees to pay on the 20th day of January, 1915, 3 cents per cup in cash, the remaining 3 cents 60 days from date of first payment. The Saner-Ragley Lumber Company does not agree to have the timber cupped over two years or a two years' lease, unless otherwise agreed to. At the end of the season the Saner-Ragley Lumber Company has a right to take over timber that has been turpentined at the end of season, and replace with other timber that is owned by the Saner-Ragley Company. J. H. Spivey agrees to leave 40 per cent. of the tree left alive between the cups as an average. The lumber company agrees to sell all parties that are working for Mr. Spivey all goods that are in the company's store at the same prices as they do their own men. Mr. Spivey agrees to settle for all bills at the first of each month, less 10 per cent. The additional timber to be turpentined each season will be on the same basis as set out above, the amount for each season will be fixed later. This covers the entire tract of timber owned by the Saner-Ragley Lumber Company. J. H. Spivey agrees not to put in a store to handle goods. Saner-Ragley Lumber Company, per W. G. Ragley, party of the First Part. J. H. Spivey, Party of the Second Part. This agreement entered into this the 28th day of November, 1914.'

"It was agreed by the parties to the contract aforesaid, and the said contract contemplated, that this plaintiff should have the right to continue his turpentining operations until all of the timber aforesaid had been so turpentined for at least two years, with the exception in said contract noted.

"(2) Plaintiff would further represent that by said contract he acquired valuable rights, and in good faith proceeded, at great expense to himself, to prepare and carry out said contract according to its terms and agreeable to all the understanding between the parties governing same, but that the defendants, and each of them, wrongfully and without any just cause, on or about, to wit, February 1, 1915, undertook to repudiate said contract on the alleged ground and claim that the said W. G. Ragley had no authority to bind the company thereby, and the defendants, and each of them, have ever since, notwithstanding the insistence on the part of the plaintiff that he should be allowed to carry out the terms of his contract aforesaid, prevented this plaintiff from so doing, and from acquiring any of the benefits secured to him by the terms of said contract, whereby this plaintiff was, without fault on his part, prevented from continuing his turpentine business for the year 1915, and to cause him practically the loss of said year to his business, as well as causing him to incur great and useless expense to his damage on said accounts in the sum of ten thousand dollars ($10,000), as well as to cause him to lose the value and reasonable profits of the rights and privileges which would have accrued to him under the terms of his contract aforesaid but for the breach thereof by the said defendants, to his damage in the further sum of sixty-five thousand dollars ($65,000).

"(3) Plaintiff would further show that according to his best information and belief there was no truth in, and the facts did not support, the defendant's contention aforesaid that the

defendant W. G. Ragley did not have authority to bind the company by his execution of the contract aforesaid, but that same was an afterthought, inspired by the fact that shortly after the said contract was entered into, and before its breach hereinbefore complained of, a certain large naval stores corporation, doing an interstate business, offered the defendants a large advance in price for the privileges conferred upon plaintiff by the contract aforesaid, the value of such turpentine privileges having in the meantime advanced, by reason of the condition of the market and demand for naval stores products, and therefore the defendants undertook to dispose of the rights which belonged to this plaintiff under the contract aforesaid to such corporation for an advance of approximately, to wit, sixty-five thousand dollars ($65,000) over the price for which plaintiff was to have secured such privileges under the terms of his contract, and the defendants wrongfully permitted said corporation last mentioned to go into possession of its timber aforesaid, and is still allowing said corporation to proceed with the work of turpentining said timber, thereby reaping the fruits and benefits thereof, which right belonged to this plaintiff under the terms of his contract aforesaid, and thereby preventing this plaintiff from securing to himself his rights by enforcing specific performance of the contract aforesaid, and leaving to this plaintiff no other relief but this action for his damages so wrongfully sustained.

"(4) This plaintiff says that at all times he was ready, able to, and willing to comply with the terms of his contract, including the payment of the amounts due by the terms thereof, on January 20, 1915, and 60 days thereafter, which payment he offered to make to said W. G. Ragley, defendant, and treasurer and general manager of the defendant company, in Beaumont, Jefferson county, Tex., where it was agreed such payments should be made; that such payment was tendered by this plaintiff promptly, and full performance of said contract thereafter, from time to time, tendered by this plaintiff with insistence, but refused by the defendants at all times.

"(5) Plaintiff would further show that the defendant W. G. Ragley was, at the time of the negotiations aforesaid and of the execution of the contract hereinbefore referred to, the treasurer and general manager of the defendant company, its principal stockholder and member of its board of directors, and, in fact, its managing director, purporting to have the authority to act in all such matters with binding force upon the defendant company, and he was held out by said company as having such authority, and did at that time, as he has, at all times during the life of the defendant company, exercised such power and authority, as this plaintiff believes and alleges, rightfully and legally.

"But, if it should be determined otherwise and that defendant company was not bound and is not bound by the contract so entered into in its behalf by and through the defendant W. G. Ragley, then, by reason of the premises and the facts and conditions surrounding the negotiations leading up to and the execution of said contract, and the acts and representations of the defendant Ragley in connection therewith, this plaintiff says that the act of the said Ragley in so contracting for and in behalf of the defendant company carried with it an implied warranty of his authority to bind thereby the said defendant company, and, if he did not by his act so bind the defendant company, he the said defendant W. G. Ragley is personally and individually bound thereby, and liable for all the damages accruing to this plaintiff by reason of the breach of said contract aforesaid.

"Wherefore, premises considered, plaintiff prays that the defendants, and each of them, be duly cited in the terms of the law to appear herein at the next regular term of this honorable court and answer this petition, and that upon final hearing hereof, this plaintiff have judgment against the defendants, and each of them, jointly and severally, for the full amount of his damages aforesaid in, to wit, the sum of seventy-five thousand dollars ($75,000), together with all costs in this behalf expended, and for all such other relief, both general and special, as this plaintiff may be entitled to receive either at law or in equity, this plaintiff will ever pray as in duty bound."

The suit was originally filed in the district court of Jefferson county. The defendants, having been duly cited, appeared in that court and filed a plea of privilege to be sued in Polk county; same being the county of their residence. Their said plea of privilege was duly sustained by the district court of Jefferson county, and the cause was ordered to be transferred to the district court of Polk county. Before the transcript in the case was made up and transferred, with papers in case, to the district court of Polk county, the plaintiff, J. H. Spivey, died. The clerk of the district court of Jefferson county, however, proceeded to prepare proper transcript and transmitted it, together with the papers, to the district court of Polk county. At the first term, thereafter, of the last-named court, the death of J. H. Spivey was duly suggested and a motion was filed by the plaintiffs in error, who are the heirs of said J. H. Spivey, praying that they be permitted to prosecute the suit as plaintiffs. This motion was granted and the plaintiffs in error were duly substituted for the original plaintiff, J. H. Spivey, and as such substituted plaintiffs they prosecuted this cause to judgment. The defendants did not, at any time, file any other answer or pleading in the cause than the plea of privilege above mentioned.

At the December term, 1920, the cause came on for trial in the district court of Polk county and the plaintiffs came and announced ready for trial, but the defendants came not, and having made no further answer than their aforesaid plea of privilege, the case proceeded to trial before the court without a jury. The court, after hearing the pleadings and the evidence, rendered judgment in favor of the plaintiffs for the sum of $75,000 damages against both defendants. Said judgment, among other things, recited that—

"* * * It further appearing to the court that the defendants herein and each of them have been duly cited to appear and answer in

this cause, and in response to service of such citation they did appear in this cause, both by their attorney and by their verified plea of privilege filed herein as aforesaid, and secured the action of the district court of Jefferson county, Tex., in which this cause was then pending, and the judgment of said court entered at their instance transferring this cause to this court for trial as aforesaid, but the said defendants and each of them have wholly failed' to answer to the merits herein, or to file any pleading in this cause other than said plea of privilege as aforesaid, and upon the call of this case for trial and upon the trial thereof came not, but wholly made default and offered no plea and said nothing as to why judgment should not be rendered herein as prayed for by plaintiffs."

The defendants in error made no complaint of said judgment in the trial court. After adjournment of the court for the term they sued out a writ of error from said judgment and carried the cause to the Court of Civil Appeals for review. That court reversed the judgment of the trial court, and remanded the cause. 255 S. W. 193. The case is now before this court on writ of error.

[1] The plaintiffs in error insist that the said judgment is a nil dicit judgment and has all the force and effect of such. Whenever a defendant has appeared in a civil action, but says nothing in bar or preclusion of the plaintiff's action, a judgment by nil dicit may be taken by the plaintiff. The effect of the defendant's so appearing and saying nothing in bar or preclusion of plaintiff's action is to impliedly confess judgment and to waive all errors of pleading or proof, except such as appear from facts in the record were not intended to be waived. This implied confession of judgment has "reference to the cause of action stated, or attempted to be stated in the petition; tantamount to an express confession only, which does not state the amount and terms of the judgment, and liable to be partially curtailed and qualified by facts in the record, which raise a rebutting presumption." Cartwright v. Roff, 1 Tex. 78; Burton v. Lawrence, 4 Tex. 373; Wheeler v. Pope, 5 Tex. 262; Prewitt v. Perry, 6 Tex. 260; Crier v. Powell, 14 Tex. 320; Storey v. Nichols, 22 Tex. 87; Goodlett v. Stamps, 29 Tex. 121; Gilder v. McIntyre, 29 Tex. 89; Garner v. Burleson, 26 Tex. 349; Janson v. Bank, 48 Tex. 599; Graves v. Cameron, 77 Tex. 273, 14 S. W. 59.

[2] The filing by the defendant of a plea of privilege to be sued in the county of his residence constitutes an appearance and places the defendant in court. York v. State, 73 Tex. 651, 11 S. W. 869; Railway v. Stevens, 109 Tex. 262, 206 S. W. 921; Railway v. Cumley, 62 Tex. Civ. App. 306, 132 S. W. 889 (writ of error refused).

[3] Whenever a defendant appears in a suit, he is presumed to be present in court, and cognizant of all subsequent proceedings in the cause. Thompson v. Alford, 20 Tex.

491; Hopkins v. Donaho, 4 Tex. 336; Jordan v. Corley, 42 Tex. 284; Bryan v. Lund, 25 Tex. 98; Kirby v. Estill, 75 Tex. 486, 12 S. W. 807; Rabb v. Rogers, 67 Tex. 335, 3 S. W. 303; Fleming v. Seeligson, 57 Tex. 524. It follows, therefore, that a defendant, who thus appears, but says nothing against a recovery by the plaintiffs upon the cause of action pleaded, or attempted to be pleaded, in the petition, is subject to have judgment by nil dicit entered against him, after his plea of privilege has been determined. If, as in this case, said plea is sustained and the cause transferred to the proper court of the county of the defendant's residence, the latter court, the defendant still remaining silent, has jurisdiction to render such a judgment against him. In such circumstances the defendant is presumed to be present in court and saying nothing in bar or preclusion of a recovery by plaintiff, when the case is heard.

Although the Supreme Court has never passed upon a nil dicit judgment in a case involving circumstances similar to these in this case, it has repeatedly held that in a case where the defendant files answer and subsequently withdraws it, a judgment by nil dicit is proper. There can be no difference between the implications arising from the conduct of the defendant in those cases and that of the defendants in this case. In one, having previously spoken, but recalling what he said, the defendant remains silent when he is required to speak; in the other, being presumptively present and required to speak, the defendants say nothing.

[4, 5] The judgment of the trial court is a nil dicit judgment, and all errors of pleading being waived, the court will not examine the petition for the purpose of determining the legal sufficiency of its averments to state a cause of action. If the petition shows an attempt to state a cause of action coming within the court's jurisdiction, the requirements of law are fulfilled, and the scope of the defendants' implied confession will be measured by the cause of action thus attempted to be stated. On the other hand, if the petition shows upon its face that the plaintiff has no cause of action to the extent covered by the judgment, it will not be implied, in the face of such showing, that the defendant intended to confess a liability to the extent which he is thus shown not to rest. Storey v. Nichols, supra. The court will examine the petition for the purpose of determining if its averments so show.

[6] At this point we deem it advisable to digress for a moment to say that our holding in reference to a nil dicit judgment and its effects is to be distinguished from those decisions (Insurance Co. v. Lee, 66 Tex. 247, 18 S. W. 508, and similar cases) which uphold a judgment by default when the defendant has an answer actually on file, but fails to call it to the attention of the court. In that kind of cases, although the answer, which re-

sists a recovery on the plaintiff's alleged cause of action and which actually is on file, will not be noticed by the court in rendering a judgment by default; the fact of such answer being actually in the record at the time such judgment is taken, leaves no room for an implied confession of judgment upon the issues of fact purported to be raised by the answer. A rebutting presumption is thus raised by facts in the record, which will be noticed by the court in the event judgment by nil dicit be requested. Storey v. Nichols, supra. Thus, when the defendant answers by general demurrer, which is overruled, but says nothing further against a recovery by the plaintiff, a nil dicit judgment will not preclude him from complaining of errors committed by the court in overruling the demurrer, for in such case the record shows that he did not mean to waive such errors. Frazier v. Todd, 4 Tex. 461.

[7] An examination of the petition in the present case discloses that its allegations, and the reasonable intendments thereof, show that the plaintffs are asserting a cause of action based upon a wrongful prevention of Spivey by both defendants from carrying out a contract. The contract upon which his said cause of action depends is shown by the averments of the petition to vest Spivey with the right to conduct turpentine operations on the tract of land, by putting in 75,000 cups during the first season mentioned in the contract. Beyond the right to operate the 75,000 cups which he was entitled to put in during the first season, the averments of the petition show upon their face that Spivey had no legally enforceable rights under the contract. Such averments show that the amount of additional timber which he was to become bound or permitted to exploit for turpentine after the first season was not determined by the contract, but was left to be fixed in the future. This imports nothing more than an agreement to make a contract relative to an indefinite amount of additional timber, which amount was to be determined and agreed upon in the future, and a nonfulfillment of such agreement by one of the parties will not create a cause of action in favor of the other party. Neither party is legally bound by such an agreement, for the parties not having bound themselves to the terms of a contract, the law will not make a contract for them and bind them to the terms thus made. Butler v. Kemmerer, 218 Pa. 242, 67 A. 332; Weegham v. Killefer (D. C.) 215 F. 168; Mayer v. McCreery, 119 N. Y. 434, 23 N. E. 1045; Wardell v. Williams, 62 Mich. 50, 28 N. W. 796, 4 Am. St. Rep. 814; Sun Printing Co. v. Paper Co., 235 N. Y. 338, 139 N. E. 470; Scholtz v. Life Ins. Co., 100 F. 574, 40 C. C. A. 556; Monahan v. Allen, 47 Mont. 75, 130 P. 768; Krum v. Chamberlain, 57 Neb. 220, 77 N. W. 665; Pause v. Atlanta, 98 Ga. 92, 26 S. E. 489, 58 Am. St. Rep. 290; Wallace v. Figone, 107 Mo. App. 362, 81 S. W. 492;

United Fruit Co. v. Louisiana Petroleum Co. 115 La. 181, 38 So. 958; Shepard v. Carpenter, 54 Minn. 153, 55 N. W. 906; Page on Contracts, § 89 et seq.

It follows, therefore, that the cause of action upon which the plaintiffs recovered judgment herein for $75,000 damages has reference solely to Spivey being deprived of his right under the contract to exploit the timber on the land to the extent of putting in not exceeding 75,000 cups; for under the terms of the contract he was only bound to put in 50,000 cups, but had the right to put in as many as 75,000. This cause of action, which is taken as confessed by defendants, will sustain the judgment that was rendered, if there be evidence in the record, showing that plaintiffs' damages flowing from this cause of action amounted to the sum for which judgment was rendered. This matter of evidence we shall discuss later.

[8] The defendants in error insist that W. G. Ragley's implied confession does not import a confession of primary liability on the part of Ragley, for the reason that the import of the petition is such as to charge Ragley with liability only in the alternative, in case it be determined that he had not the authority to bind the lumber company by the contract which he purported to have. This contention would be sound if borne out by the record. But, the petition charges Ragley (as well as the lumber company) with wrongfully preventing Spivey from carrying out the contract and securing the benefits thereof. The act thus charged constitutes a breach of contract by the lumber company, and a tort on the part of Ragley for which tort Ragley is primarily liable in damages (Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914), and the plaintiffs sought recovery of damages against him on account of such wrong. This charge necessarily presupposes a binding contract on the part of the lumber company, which is a necessary prerequisite to a recovery for a wrongful prevention of its being carried out by Spivey; for if there were no contract, there could be no such wrongful prevention. The alternative allegations against Ragley, charging him with on alternative liability, has reference to a distinct cause of action which would arise only in case it were determined that the lumber company was not bound by the contract, with the prevention of the carrying out of which by Spivey the said Ragley was charged in the preceding paragraph of the petition. The court having rendered judgment against both defendants upon the primary cause of action alleged against them respectively, the alternative cause of action alleged against Ragley alone went out of the case.

[9] We come now to examine the evidence upon which the damages awarded by the judgment were assessed herein, which evidence is duly challenged by the defendants in

error. By the authorities, the rule is declared to be that in a case of unliquidated damages the amount claimed in the petition is not taken as confessed; but a writ of inquiry may be awarded as in cases of judgment by default. . Storey v. Nichols, 22 Tex. 87; Goodlett v. Stamps, 29 Tex. 121; Gilder v. McIntyre, 29 Tex. 89.

[10, 11] In this case the damages were assessed by the court, after hearing evidence, without the aid of a jury upon a writ of inquiry. In view of the legal presumption that the defendants in error were present at such hearing, though not making their presence known, and were waiving all objections (which presumption prevails, -as we have stated, in cases of judgment by nil dicit), the defendants in error cannot afterwards complain that the court assessed the damages, instead of having them assessed under a writ of inquiry. But we think that, in cases of unliquidated damages, the effects of such presumption should not be so extended as to preclude a defendant from complaining, by proper assignment of error on appeal, of the insufficiency of the evidence to support the judgment for the amount recovered. Whenever the damages are unliquidated, and the amount thereof depends for ascertainment upon the evidence adduced upon the trial, the defendant will not be presumed to have waived the insufficiency of such evidence to support the amount of recovery, for he is entitled to rely upon the court to render judgment only upon sufficient evidence on the subject.

[12] In this case the evidence is wholly insufficient, for the reason there is no evidence at all tending to show the amount of damage suffered by Spivey on account of the loss of his right to conduct the turpentine operations which he was entitled to conduct under the terms of his contract. All the evidence introduced plainly relates to operations covering the timber on the entire tract during a period of two years, and involving over a million cups. There is no evidence tending to show what profits would have accrued to him from the 75,000 cups which he had the right to put in during the first year, or to show the probable expense of operations pertaining thereto. Nor is there any evidence in the record tending to show the amount of loss suffered by Spivey on account of lost time from his business and from having incurred great and useless expense in preparing to carry out his contract, as alleged by the plaintiffs in error.

Summing up our conclusions herein, we think that the judgment of the trial court has effect to fix and establish liability to plaintiffs in error on the part of both of the defendants in error for such damages alleged or attempted to be alleged in the plaintiff's petition upon which said judgment was rendered, as may be found to have been suffered by J.

H. Spivey because of the defendants in error having prevented the said Spivey from putting in 75,000 cups, during the year 1915, for the purpose of turpentining timber on said land and securing the products thereof; that to the extent above stated the said judgment should stand, but should be so reformed as to maintain and keep fixed such liability of the defendants in error as above stated, and, to the extent that it is so reformed, the said judgment should be affirmed; that in respect to the amount of damages awarded by said judgment, and to that extent only, the judgment of the Court of Civil Appeals reversing the judgment of the trial court is correct, but said Court of Civil Appeals, in remanding the cause, should have instructed the trial court to proceed only to determine, by proper proceedings, the amount of damages for which the defendants in error are liable to the plaintiffs in error, as such liability is hereinabove recommended to be fixed, and, when said amount of damages is so determined, judgment be rendered therefor.

We therefore recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause, in so far as the amount of recovery awarded by such judgment is concerned, be affirmed, with such instructions from this court to the trial court as ought to have been given by the Court of Civil Appeals, as above stated, but that in all other respects said judgment of reversal by the Court of Civil Appeals be reversed, and the judgment of the trial court be reformed, in the respects above stated, and affirmed as so reformed.

CURETON, C. J. The judgment recommended by the Commission of Appeals is adopted as the judgment of the Supreme Court.