PETER O'SHEA & SON, APPELLANT, V. ALVINA LEAVITT ET AL., APPELLEES.

FILED MAY 24, 1933. No. 28452.

*J. M. Fitzgerald,* for appellant.

*Beach Coleman* and *Mothersead & York, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ.

EBERLY, J.

This is an action by the plaintiff, a real estate agent, against Alvina Leavitt, alleged to be the owner in fee of the premises described in the second amended petition, and one C. A. Eastman, who it is alleged had or claimed to have some equitable right in the premises, and in addition "was duly authorized to act for and on behalf of the said Alvina Leavitt as agent for the sale of the said premises." This petition further alleges the making of a contract in writing whereby the defendants employed plaintiff to secure a purchaser for the lands owned by them, at a compensation, and that plaintiff procured a purchaser, ready, able and willing to purchase the prem-

ises, and that defendants failed to comply with their contract, to plaintiff's damage. The action was commenced by service of attachment on the real estate involved, as the property of nonresidents of Nebraska. No personal service of summons was made upon either of the defendants. Alvina Leavitt alone appeared, and for her answer (1) admitted that she was the owner in fee of the premises described in plaintiff's petition; (2) denied that "Eastman had or claimed to have any right in and to said premises;" (3) expressly denied that "Eastman was authorized in any manner to act for and on behalf of this defendant for the sale of the premises;" (4) and further denied generally the allegations of the second amended petition.

There was a trial to a jury, in which, at the conclusion of plaintiff's evidence, upon motion of defendant Leavitt, a verdict was instructed for defendant Alvina Leavitt, and the action was dismissed. From the order of the court overruling a motion for a new trial, the plaintiff appeals.

The terms of the controlling statute are: "Every contract for the sale of lands, between the owner thereof and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent, and such contract shall describe the land to be sold, and set forth the compensation to be allowed by the owner in case of sale by the broker or agent." Comp. St. 1929, sec. 36-108.

The evidence wholly fails to establish that Eastman had any right or title in and to the real property involved, and there is no competent evidence that Eastman was authorized in any manner to act for and on behalf of defendant Leavitt for the sale of the premises. Plaintiff's evidence justifies the conclusion that defendant Leavitt became the owner of, and vested with the fee title in, the premises long before the inception of the transaction in suit. We may also infer that the answering defendant is a widow, and that the executors of her husband's

will, and possibly in the capacity of trustees created thereby, carried on certain negotiations with plaintiff, evidenced by telegrams and letters introduced in evidence by plaintiff over defendant's objections. These communications were signed by the name of Eastman. But if we are justified in making these inferences, we must also credit the force and effect of the statement in plaintiff's exhibit 36, a letter signed by J. Louis Donnelly, viz.: "All steps taken by Mr. Eastman were done so at my request and his wires to you, as an executor, and the signing of leases, as an executor, were all a misunderstanding as the estate had no legal right to sell or lease the land. The executors could readily agree to any sale of property but had no power of sale."

In the most favorable view of this evidence from the standpoint of plaintiff, the situation thus presented can at most but invoke the application of the principle announced by this court in *Tecumseh Nat. Bank v. Chamberlain Banking House,* 63 Neb. 163, viz.: "When a principal is represented by a duly authorized agent, and some third person who may also be benefited by the transaction assumes, without the knowledge or consent of the principal or his agent, to make representations and statements to promote the transaction, the principal will not be bound thereby, although he accepts the benefits of the transaction negotiated by his agent."

However, there is no evidence in the record that Eastman, or any of the executors or trustees of the estate of Heyward G. Leavitt, were in any manner authorized in writing to represent the defendant in the transaction as her agent. *Morgan v. Bergen,* 3 Neb. 209; *O'Shea v. Rice,* 49 Neb. 893; *Miller v. Wehrman,* 81 Neb. 388. In fact, none of the several communications in the record, ostensibly made in behalf of Eastman or his coexecutors, purport to be made in behalf of the defendant Leavitt. True, they, in their official capacities, mistakenly assumed to have a legal interest or title in the land, and erroneously supposed that the estate they represented would be bene-

fited by their acts. But mistakes coupled with entire lack of power are certainly wholly ineffective to raise, create, or vest rights in the parties with whom they were dealing as against the responsible defendant from whom they had received no authority whatever. These negotiations therefore must be wholly eliminated from consideration, save and except as Mrs. Leavitt expressly made them her own in the manner contemplated by statute.

The consideration of the remaining evidence in the record must be made in the light of the statutory provisions quoted. As construed by this court, such provisions mean that, in order for a broker to recover for commission for sale of land, the contract of brokerage must be in writing, subscribed by the owner of the land and the broker, and among other things set forth the compensation to be allowed by the owner. Comp. St. 1929, sec. 36-108; *Spence v. Apley,* 4 Neb. (Unof.) 358; *Nelson v. Woodhouse,* 112 Neb. 359; *Covey v. Henry,* 71 Neb. 118; *In re Estate of Brockway,* 100 Neb. 281; *Gill v. Eagleton,* 108 Neb. 179; *Smith v. Aultz,* 78 Neb. 453.

It may be conceded that a binding contract of employment under the terms of the statute may be made by correspondence. But in order to be a binding contract, either of an agency employment or sale of real estate, there must be in effect a meeting of the minds of the parties, and there must finally be a written offer by one party which is accepted in writing by the other, and is established by the writings relied on. *Melick v. Kelley,* 53 Neb. 509; *Fulton v. Ryan,* 60 Neb. 9; *Sennett v. Melville,* 76 Neb. 690; *Cooper v. Kostick,* 112 Neb. 816; *Olmsted v. Caldwell,* 110 Neb. 18; *Krum v. Chamberlain,* 57 Neb. 220; *Lopeman v. Colburn,* 82 Neb. 641; *Smith v. Bertrand,* 107 Neb. 301; *Ross v. Craven,* 84 Neb. 520.

Thus, the words of the controlling statute necessitate a written contract subscribed by the parties thereto, which is not satisfied by a written memorandum of a parol agreement signed only by one party thereto. *Spence v. Apley,* 4 Neb. (Unof.) 358.

The plaintiff firm failed to comply with this requirement. Its proof did not bring it within the restrictions of the quoted statute. Not only is there a lack of competent evidence to establish the making of the brokerage contract, or agreement of agency, but the evidence affirmatively establishes that the land in controversy was actually sold to a purchaser with whom the plaintiff had no connection whatever, and upon terms not shown to be substantially identical with those claimed to have been submitted by plaintiff to defendant Leavitt.

It follows that the action of the trial court is fully sustained by the record, and the judgment entered is

AFFIRMED.